KILLIAN *vs.* THE AUGUSTA AND KNOXVILLE RAILROAD COMPANY.

1. *Semble* that a person in the employment of a railroad company, who was directed to accompany a train and to deliver a load of rough lumber, slabs, etc. at a point on the line of another railroad, and who was killed by the car's leaving the track of the latter road by reason of an alleged defect in the construction of the track, was not an employé of the latter road for the purpose of transacting the business in which he was engaged; so that, in order for his widow to maintain an action for his homicide, he must have been free from fault.

2. Whether he was such a co-employè or not, his widow was entitled to maintain an action for his homicide, unless he was guilty of negligence. There being a conflict of testimony on that point, it was a question for the jury, and the grant of a nonsuit was error.

3. Where interrogatories were forwarded by mail, and reached the place of their destination by due course of mail, as was shown by the official stamp of the post-office department, placed upon the package at that point and giving the date of its arrival, and thereupon such package was taken by the mail-carrier and delivered to the clerk of the superior court, who entered on it the person from whom and the time when he received it, this was a substantial compliance with the act of September 26, 1883 (acts 1882–3, p. 102).

(*a*). Where the parties entered into a written consent that the package should be opened, which was accordingly done, this was a waiver of any objections to irregularities in these respects apparent on the outside thereof.

4. To avoid mistake as to the foundation to be laid for expert testimony, it may be well to add that the rule on this subject applies only to one who is unacquainted with the facts and their surroundings. Where one has this knowledge of the facts and their surroundings, he may give his opinion by showing the reason for it, whether he be an expert or not.

March 25, 1887.

Railroads. Damages. Negligence. Master and Servant. Words and Phrases. Practice in Superior Court. Witness.

Interrogatories.   Before Judge LUMPKIN.   Richmond Supe-
rior Court.   October Adjourned Term, 1886.

Reported in the decision.

J. S. & W. T. DAVIDSON, for plaintiff in error.

Jos. GANAHL, for defendant.

HALL, Justice.

This was a suit brought by the widow of Killian, who was
in the employment of the Port Royal and Augusta Rail-
way Company, and who was directed to accompany a train
and to deliver a load of rough lumber, slabs, etc. at the
Sibley Mill, a point on the Augusta and Knoxville Rail-
road.   The alleged carelessness on the part of the defend-
ant consisted in the defective construction of a certain
curve at a point on the streets of Augusta, and over which
this train had to pass.   It seems from the evidence that
the deceased, the plaintiff's husband, was riding on the end
car of the train, accompanied by three or four others, who
were bound upon the same mission, and that at that curve
this car was derailed and he was killed.   This was sub-
stantially the case made by the plaintiff, as shown by the
facts in proof.   Upon the conclusion of the testimony for
the plaintiff, a nonsuit was awarded.

There was a dispute as to the precise portion of the front
car occupied by the plaintiff's husband at the time of the
casualty which resulted in his death.   There was also a
dispute as to the relative safety of his position, whether
it was less safe there than it would have been on other
portions of the train.   It was insisted that he was in the
most dangerous position that could have been taken on
that train.   It was further contended that he was an em-
ployé of the Augusta and Knoxville Railroad Company,
for the purpose of transacting the business in which he was
then engaged, and that in order to maintain this action, he
must have been free from fault.

1, 2. It is by no means clear to our minds that he was a co-employé with the persons in the employment of the Augusta and Knoxville Railroad Company, and who were in charge of the train on that occasion; but we do not decide that question definitely. We refer on that subject simply to the decision of this question in the case of *Cooper vs. Mullins*, 30 *Ga.* 146.

But whether he was a co-employé or not with those in charge of the train, his widow was entitled to maintain this action against the defendant, unless he was guilty of negligence; and negligence was a fact for the jury to pass upon in that as well as in other cases. Although there was a conflict of testimony on that point, the jury were not permitted by the court to pass upon the question; and if upon no other ground, the judgment awarding the nonsuit must be set aside, and a new trial granted, for that reason. The plaintiff has not had her rights.

3. There is one other question in this case, which, on account of its practical importance, we deem it necessary to dispose of. Interrogatories were sued out for one Radford, who was a resident of Port Royal, South Carolina. The answers to these interrogatories were taken there; and upon the execution of the commission, the papers were turned over and mailed from Port Royal, the person acting as postmaster signing the ordinary certificate to the same, but not adding after his signature the word, postmaster, P. M. or anything equivalent, which was afterwards supplied by the postmaster of Port Royal coming into court and adding to his signature the initials P. M. They reached Augusta by due course of mail, as was shown by the official stamp of the post-office department, placed upon the package at that point and giving the date of its arrival. The package was then taken by the carrier and delivered to the clerk of the superior court, the clerk thereupon entering on the package the person from whom and the time when he had received it. After remaining in the office a short time, these interrogatories were opened

by the written consent of both parties, which was en-
dorsed upon the package.

The act of the 26th of September, 1883, authorizes the
receipt and delivery of interrogatories at any time, either in
term time or in vacation.  It seems to have been the main
purpose of this act, to enable the interrogatories to be de-
posited in the clerk's office in vacation.  The first section
of it requires that the postmaster at the office to which
they are directed shall, immediately upon its reception,
endorse upon the package the fact of its reception by due
course of mail, and at once deliver the package to the
clerk of the superior court.  The second section prescribes
the duties of the clerk, which are to endorse upon the
package the person from whom and the time when he re-
ceived it; and if received in vacation, to file it away,
with the seal unbroken, until the term of the court.  There
is, however, a proviso in the act allowing it to be opened
at any time by consent in writing of counsel for both
parties.  Acts of 1882, 1883, p. 102.

We think that there was a substantial compliance with
this act.  The reception of the interrogatories by due
course of mail, and the time of the reception, was evi-
denced by the official stamp of the postmaster, put upon
the package at the post-office, whereby it appeared that
the interrogatories had not been tampered with or violated.
The delivery of the package to the clerk by the mail-
carrier, the assistant of the postmaster, required by law
to act in his behalf and to perform that duty, was shown
by the certificate of the clerk.  And to render the act of
any value in cities where the delivery is made by carriers,
such a delivery and such memorandum of the arrival of
the package, must be deemed a sufficient compliance with
its provisions.  But be this as it may, the parties, by their
consent in writing, agreed that the package should be
opened; and this, we think, was a waiver of any objec-
tion to irregularities in these respects, apparent on the
outside of the package.

4. There are several other questions in this case as to the rejection of certain portions of the testimony, and as to whether the witnesses were experts or not. It is doubtful in some of these instances whether a proper foundation was laid for the introduction of expert testimony. But whether this be true, it is not very material to decide, as on the next hearing these deficiencies may be supplied. To avoid mistake as to the foundation to be laid for expert testimony, however, it may be well to add that this rule applies only to one who is unacquainted with the facts and their surroundings. Where one has this knowledge of the facts and their surroundings, he may give his opinion by showing the reason for it, whether he be an expert or not.

Upon the two grounds stated, we reverse the judgment of the court below.

Judgment reversed.