[Civil No. 1173.    Filed March 27, 1911.]

[114 Pac. 955.]

GRANT BROTHERS CONSTRUCTION COMPANY, a Corporation, Defendant and Appellant, v. THE UNITED STATES OF AMERICA, Plaintiff and Appellee.

1. ALIENS—UNLAWFUL IMPORTATION—RECOVERY OF PENALTY—PROOF REQUIRED.—To warrant recovery of the penalty prescribed by Act of Congress of February 20, 1907, chapter 1134, section 5, 34 Stat. .900 (U. S. Comp. Stats. Supp. 1909, p. 451), for encouraging immigration of alien contract laborers, there must have been a conscious violation of the act.

2. CORPORATIONS—CRIMINAL RESPONSIBILITY—INTENT.—A corporation can form a criminal intent, and have the knowledge essential, provided the officers representing it have such knowledge or intent.

3. STATUTES—PENAL STATUTES—CONSTRUCTION.—Act of Congress of February 20, 1907, chapter 1134, sections 4, 5, 34 Stat. 900 (U. S. Comp. Stats. Supp. 1909, pp. 450, 451), prescribing a penalty for encouraging immigration of alien contract laborers, being penal, must be strictly construed.

4. MASTER AND SERVANT—UNLAWFUL ACTS OF EMPLOYEE—EMPLOYER'S RESPONSIBILITY.—One is not criminally responsible for unlawful acts of his employee, though committed in the employer's business, unless they were directed by or knowingly acquiesced in by the employer.

5. CRIMINAL LAW—UNLAWFUL ACTS BY AGENT—PRINCIPAL'S RESPONSIBILITY.—One is not liable criminally for unlawful acts of his agent, though committed in the principal's business, unless they were directed by or acquiesced in by the principal.

6. ALIENS—UNLAWFUL IMPORTATION—KNOWLEDGE OF PRINCIPAL—JURY QUESTIONS.—Whether a construction company for which alien contract laborers were imported in violation of Act of Congress, February 20, 1907, chapter 1134, sections 4, 5, 34 Stat. 900 (U. S. Comp. Stats. Supp. 1909, pp. 450, 451), had such knowledge of the unlawful acts as to warrant assessment of a penalty, *held* under the evidence a jury question.

7. APPEAL AND ERROR—REVIEW—EVIDENCE.—The supreme court cannot review the weight of evidence nor determine what verdict should have been rendered thereon, its province being merely to determine whether there was sufficient evidence to warrant the verdict.

8. DEPOSITIONS—NOTICE OF APPLICATION FOR COMMISSION—PURPOSE.—The purpose of notice of taking of depositions is to advise the adversary of the application for commissions to take the depositions

and of the interrogatories attached thereto, so that he can frame cross-interrogatories.

9. SAME—SAME—SUFFICIENCY.—Where defendant obtained a change of venue after plaintiff had prepared, but before service of, notice of an application to the clerk of the original court for commissions to take depositions, it was not necessary to serve new interrogatories and new notices, specifying the clerk of the court to which the cause was transferred.

10. SAME—IRREGULARITIES.—Opening depositions at the adversary's request waived irregularities appearing on the outside of the envelope.

11. ALIENS—UNLAWFUL IMPORTATION—EVIDENCE—ADMISSIBILITY.—In an action under Act of Congress of February 20, 1907, chapter 1134, section 5, 34 Stat. 900 (U. S. Comp. Stats. Supp. 1909, p. 451), for penalties for encouraging immigration of alien contract laborers, evidence of statements made by the associates and employees of one with whom defendant contracted was admissible to show the acts done under the contract, though the evidence also tended to show defendant's knowledge of the unlawful acts.

12. SAME—SAME—SAME—SAME.—In an action under Act of Congress of February 20, 1907, chapter 1134, section 5, 34 Stat. 900 (U. S. Comp. Stats. Supp. 1909, p. 451), for penalties for encouraging immigration of alien contract laborers, a decision of a board of special inquiry of the federal immigration service respecting the status of the particular aliens was properly received in evidence.

13. TRIAL—REFUSAL OF INSTRUCTIONS—GROUNDS.—Instructions inconsistent with the facts as developed on the trial are properly refused.

14. SAME—SAME—SAME.—Instructions covered by those given are properly refused.

15. ALIENS—LABOR LAW—SUIT FOR PENALTY—COSTS.—A successful party in a suit under Act of Congress of February 20, 1907, chapter 1134, section 5, 34 Stat. 900 (U. S. Comp. Stats. Supp. 1909, p. 451), for penalties for encouraging immigration of alien contract laborers, is entitled to costs.

APPEAL from a judgment of the District Court of the First Judicial District. John H. Campbell, Judge. Affirmed.

The facts are stated in the opinion.

Baker & Baker, Isadore B. Dockweller and F. C. Struckmeyer, for Appellant.

The judgment is contrary to law and not supported by the evidence. This action, though civil in form, is in fact an action to recover a penalty for the commission of a crime, and the act imposing the penalty is highly penal and "should

be so construed as to bring within their condemnation only those who are shown, by direct and positive averments and clear proof to be embraced within the terms of the law." *Moffit* v. *United States,* 128 Fed. 375, 63 C. C. A. 117. "The law is highly penal, and must be strictly construed." *United States* v. *Edgar,* 45 Fed. 44; *United States* v. *Gay,* 95 Fed. 226; *United States* v. *Stevenson,* 215 U. S. 190, 30 Sup. Ct. 35, 54 L. Ed. 153. A master is not liable criminally for the unlawful act of his agent, or servant, though such unlawful act was committed in the master's business, unless such unlawful act was directed by him, knowingly assented to or acquiesced in. "The relation of principal and agent does not appertain to transactions which are illegal, immoral or opposed to public policy. Parties to such transactions are both liable as tort-feasors or criminals, and all contracts thus entered into are null and void." 2 New Am. & Eng. Ency. of Law & Proc. 834; 26 Cyc. 1545; 1 Clark & Marshall on Agency, 1140; Mechem on Agency, 746; *Hoover* v. *Wise,* 91 U. S. 311, 23 L. Ed. 393. Whatever may be the answerability of the principal for the wrongful act of his agent in civil actions, he is not answerable criminally when the act is in positive disobedience to his explicit instructions." *Commonwealth* v. *Junkin,* 170 Pa. 194, 32 Atl. 617, 31 L. R. A. 124; *Cushing* v. *Dill,* 2 Scam. (Ill.) 460; *Whitecraft* v. *Vanderver,* 12 Ill. 235; *Cushing* v. *Oliver,* 81 Ill. 444; *Satterfield* v. *Western Union Tel. Co.,* 23 Ill. App. 446; *Patterson* v. *State,* 21 Ala. 571; *Sagers* v. *Nuckolls,* 3 Colo. App. 95, 32 Pac. 187. "The authority to take testimony in this manner, being in derogation of the rules of common law, has always been construed strictly; and therefore it is necessary to establish that all of the requisites of the law have been complied with before such testimony is admissible. Before a deposition should be allowed to be read in evidence, every requisite of the statute must have been substantially and fully complied with." *Western Union Tel. Co.* v. *Collins,* 45 Kan. 88, 25 Pac. 187, 10 L. R. A. 515; *Harris* v. *Wall,* 7 How. (U. S.) 693, 21 L. Ed. 875; *Garner* v. *Cutler,* 28 Tex. 175; *Knode* v. *Williamson,* 17 Wall. (U. S.) 587, 21 L. Ed. 670. Evidence taken by virtue of a commission cannot be received by the court, unless taken and returned into court in the manner and form provided by statute. "Costs in criminal proceedings

are a creature of statute, and a court has no power to award them unless some statute has conferred it." *United States* v. *Gaines,* 131 U. S. Appendix, clxx, 25 L. Ed. 733; 11 Cyc. 24; 8 Ency. of Pl. & Pr. 955.

J. E. Morrison, United States Attorney, and J. C. Forrest, Assistant United States Attorney, for Appellee.

A corporation or person may become liable, civilly and criminally, where the corporation directs, acquiesces in or ratifies the unlawful acts. "Where there is evidence tending to prove every material fact necessary to be found to sustain the judgment of the lower court, it is not the province of this court to weigh it or decide upon its preponderance." *Old Dominion Copper Co.* v. *Andrews,* 6 Ariz. 205, 56 Pac. 969. "Where there is a conflict in evidence, this court will not interfere with the findings of the trial court." *Miller* v. *Green,* 3 Ariz. 205, 73 Pac. 399; *McCormack* v. *Arizona Central Bank,* 5 Ariz. 278, 52 Pac. 469; *Ryder* v. *Leach,* 3 Ariz. 129, 77 Pac. 490; *Brash* v. *White,* 3 Ariz. 212, 73 Pac. 445; *De Mund Lumber Co.* v. *Stillwell,* 8 Ariz. 1, 68 Pac. 543. Corporations, of necessity, operate and do business through agents. The facts taken together tend to show that the appellant, through its principals, had knowledge, both actual and constructive, of the unlawful importation of the forty-five aliens named in the complaint, and that appellant originally entered into an arrangement, which not only permitted but in effect authorized these unlawful importations. "A corporation is responsible for the acts of its servants of the character under consideration, when done within the scope of their general authority, although forbidden by the corporation." *Overland Cotton Mills Co.* v. *People,* 32 Colo. 263, 105 Am. St. Rep. 74, 75 Pac. 924; *State* v. *Railroad Co.,* 91 Tenn. 445, 10 S. W. 229; *Railway Co.* v. *Ryan,* 56 Ark. 245, 19 S. W. 839; 21 Ency. of Law, 896; *Western Maryland R. R. Co.* v. *Franklin Bank,* 60 Md. 36; *Titus* v. *Great Western etc. Road Co.,* 61 N. Y. 237; *Holbrook* v. *New Jersey Zinc Co.,* 57 N. Y. 616; *Allen* v. *South Boston R. R. Co.,* 150 Mass. 200, 15 Am. St. Rep. 185, 22 N. E. 917, 5 L. R. A. 716; Clark on Corporations, 438. "The defendant could not be convicted unless it either actually knew that it was accepting and receiving a concession, or willfully and intentionally ignored

facts and circumstances known to it which would have led to such knowledge." *Standard Oil Co.* v. *United States,* 164 Fed. 376. "The act is penal in its consequences, and must be strictly construed, and as knowledge is generally the principal and indispensable ingredient in offenses, it would seem reasonable to hold the government to proof of it, or to proof of circumstances from which it might be fairly inferred." *United States* v. *Beaty,* Fed. Cas. No. 14,555, Hempst. 487; *United States* v. *Houghton,* 14 Fed. 544. "A *bona fide* substantial compliance with the rule requiring notice is sufficient." 13 Cyc. 881 (note 44); *Kellum* v. *Smith,* 39 Pa. 241. "Where the depositions are received by mail and there is no evidence of irregularity, it will be presumed that the commissioner duly deposited them in the proper postoffice, although no indorsement or certificate to that effect appears." 13 Cyc. 963. "Opening of the package by agreement of the parties is a waiver of irregularities in transmission." *Killian* v. *Augusta etc. R. R. Co.,* 78 Ga. 749, 3 S. E. 621. "The successful party to a suit shall recover of his adversary all the costs expended or incurred therein, except where it is or may otherwise be provided by law." Ariz. Rev. Stats. 1901, par. 1543.

KENT, C. J.—The appellant, Grant Bros. Construction Company (whom we shall hereafter designate as the construction company), is engaged in the business of a railroad contractor, and in the year 1909 was building a line of railroad between Kelton and Naco, Arizona. The construction work required the services of a large number of laborers, and, as such laborers were constantly leaving the employment, the work necessitated the constant employment of new laborers to take the place of those leaving; some 5,000 laborers in all having been from time to time employed. The officer of the construction company in charge of the employment of the men was Angus Cashion, its assistant general foreman. During the latter part of August or the 1st of September, 1909, Angus Cashion entered into an oral contract with one W. W. Carney, at Nogales, Arizona, to furnish the construction company laborers for its construction camps in Arizona, agreeing to pay Carney a dollar a head in gold for every laborer delivered to its camps and twenty cents per meal while en route

from Nogales, Arizona, to the construction camps. It having come to the attention of the authorities that laborers for the construction company were being brought into this country from Mexico, the United States brought an action in the district court against the construction company to recover a penalty under sections 2, 4, and 5 of the act of Congress approved February 20, 1907, entitled: "An act to regulate the immigration of aliens into the United States" (34 Stat..898; Fed. Stat. Ann. Supp. 1907, p. 96 [U. S. Comp. Stats. Supp. 1909, p. 447]). The complaint contained forty-five counts. The first count alleged that on the twenty-ninth day of October, 1909, the construction company induced and solicited, and caused to be induced and solicited by offers and promises of employment as a laborer for the construction company, one Benito Acuna to migrate from the United States of Mexico into the United States of America, and that upon such offers and promises the said Acuna did migrate from the United States of Mexico to the United States of America, and that the construction company assisted and encouraged, and caused to be assisted and encouraged, the importation and immigration of the said Acuna into the United States, and furnished and caused to be furnished conveyance and transportation to the said Acuna, and paid and caused to be paid the expenses of his trip from Hermosillo, state of Sonora, United States of Mexico, into Naco, territory of Arizona, in the United States of America. The count further alleged that the said Acuna was an unskilled laborer and not one of the classes of persons exempt from said act of Congress. The allegations of the remaining forty-four counts of the complaint are identical with the first count, except that a different alien is named in each count. Each count prays judgment for $1,000, and the complaint concludes with a prayer for judgment against the construction company for $45,000. The construction company interposed a general denial, and upon the issues so formed the jury returned a verdict against the appellant on all of the forty-five counts of the complaint, and fixed the amount of the recovery of the United States at $45,000. Upon this verdict a judgment was entered, and from this judgment and an order denying a motion for a new trial, the construction company has appealed to this court.

It is conceded by the appellant that the provisions of the act in question were violated by Carney and his associates and subordinates, and that in the carrying out of the contract between him and the construction company Carney and his associates and subordinates, by offers and promises of employment, directly procured the importation and migration of contract alien laborers into the United States, and the record amply bears out this concession. It is claimed, however, by the appellant that the acts done in violation of the law were the acts of Carney and his associates and subordinates, and not the acts of the construction company, done without the knowledge, assent, or ratification of the company, and for which it is in no way responsible, and that the verdict and judgment of the court is contrary to law, in that it is not supported by the evidence.

The sections of the act, so far as material, are as follows:

"Sec. 2.    That the following classes of aliens shall be excluded from admission into the United States: . . . persons hereinafter called contract laborers, who have been induced or solicited to migrate to this country by offers or promises of employment or in consequence of agreements, oral, written, or printed, express or implied, to perform labor in this country of any kind, skilled or unskilled; . . ."

"Sec. 4.    That it shall be a misdemeanor for any person, company, partnership, or corporation, in any manner whatsoever, to prepay the transportation or in any way to assist or encourage the importation or migration of any contract laborer or contract laborers into the United States, unless such contract laborer or contract laborers are exempted under the terms of the last two provisos contained in section two of this act.

"Sec. 5.    That for every violation of any of the provisions of section four of this act the persons, partnership, company, or corporation violating the same, by knowingly assisting, encouraging, or soliciting the migration or importation of any contract laborer into the United States shall forfeit and pay for every such offense the sum of one thousand dollars, which may be sued for and recovered by the United States, or by any person who shall first bring his action therefor in his own name and for his own benefit, including any such alien thus promised labor or service of any kind as aforesaid, as

debts of like amount are now recovered in the courts of the United States; and separate suits may be brought for each alien thus promised labor or service of any kind as aforesaid. And it shall be the duty of the district attorney of the proper district to prosecute every such suit when brought by the United States.''

It is to be noted that the act is broad and comprehensive in its terms.  By section 4 it is made a misdemeanor for any person or corporation in any manner whatsoever to prepay the transportation, or in any way to assist or encourage the importation or migration, of any contract laborer into the United States, unless such laborer be of the class exempt, and that by section 5 provision is made for the bringing of an action to recover a penalty against any person violating the provisions of section 4 by knowingly assisting, encouraging or soliciting the migration or importation of any such contract laborer into the United States.  In order to warrant a recovery in the action, the violation of the act must have been knowingly done by the person sought to be held responsible. Under the act it is not sufficient that the defendant sought to be charged assisted, encouraged, or solicited the importation of a contract laborer into the United States, unless such was done knowingly; but a corporation, as well as an individual, is capable of forming a guilty intent and capable of having the knowledge necessary, provided the officers of the corporation capable of voicing the will of the corporation have such knowledge or intent.  This act, a statute of the United States, being penal in its consequences, must be strictly construed, and as knowledge is the principal and indispensable ingredient in the offense, the government, the plaintiff in the case, must be held to proof of such knowledge or to proof of circumstances from which it might be fairly inferred.  Unless the evidence, therefore, affords proof of knowledge by the construction company, or proof of circumstances from which such knowledge may be fairly inferred, of the acts of Carney and his associates, the construction company cannot be held liable for such illegal acts of Carney, for the master or principal is not liable criminally for the unlawful acts of his agent or servant, though such unlawful act be committed in the master's business, unless such unlawful act was directed by him or knowingly assented to or acquiesced in.

A clear definition of what is meant by legal knowledge is found in the language employed by Judge Nixon in charging the jury in the case of the *United States* v. *Houghton* (D. C.), 14 Fed. 544, which was a criminal prosecution based upon section 5418 of the Revised Statutes of the United States (U. S. Comp. Stats. 1901, p. 3666), making it a misdemeanor for any person to present to any officer of the United States any false, forged, or altered public record and other writing, *knowing* the same to be false: ''What is legal knowledge of a fact? There is great misapprehension in the popular mind on this subject. There seems to be a prevalent notion that no one is chargeable with more knowledge than he chooses to have; that he is permitted to close his eyes, when he pleases, upon all sources of information, and then excuse his ignorance by saying that he does not see anything. In criminal, as well as civil, affairs every man is presumed to know everything that he can learn upon inquiry, when he has facts in his possession which *suggest the inquiry.* This knowledge of the defendant must be affirmatively shown by the government. Except in the case of confession, it is generally impossible to make it out by direct evidence, and can only be inferred from overt acts. Wharton, in discussing the subject, says that if the knowledge cannot be implied from the facts and circumstances which, together with it, constitute the offense, other acts of the defendant from which it can be implied to the satisfaction of the jury must be proved at the trial.''

It is the contention of the appellant that the testimony adduced in the cause is not sufficient to show knowledge on the part of the construction company of the acts complained of. The testimony is voluminous, consisting partly of oral testimony and partly of depositions read in evidence. The testimony of the plaintiff tended to show the following facts: The contract between Angus Cashion and Carney above referred to, whereby Carney was to furnish laborers to the construction company, Carney to receive a dollar a head in gold and twenty cents a meal for feeding the men en route; that Carney was a man who had had business relations with the construction company for several years prior to the making of the agreements; that Carney stated that he was going to open offices to secure the laborers in Nogales, Naco, and Douglas, Arizona; that these three towns are along the border between

Arizona and Mexico; that Carney's office was in Nogales, Mexico, though his house was in Nogales, Arizona; that Carney employed the firm of C. F. Holler & Co., whose offices are in Nogales, Arizona, which firm was composed of C. F. Holler and C. J. Ruppelius, offering to pay them fifty cents of the dollar that he was to receive for each laborer. Between the time of making the contract and the 29th of October, 1909, approximately 450 men were delivered under this contract to the construction company at their works in Arizona, ninety-five per cent of whom were Mexicans, and at least eighty of these had been brought up from Hermosillo, Mexico, where they had been openly employed to work for Grant Bros. Construction Company through the solicitations of Ruppelius, and, having successfully evaded the interrogations of the immigration officers, presented themselves at the American offices of Holler & Co. in Nogales, Arizona, and were thence shipped to the construction company's camp.

The plaintiff showed that Ruppelius did not pay the transportation of these eighty men from Hermosillo to Nogales, that Carney did not pay it, and that Holler & Co. did not pay it, and from the fact that none of such persons interested in the contract paid such transportation, or under the terms of the contract could afford to pay it, argues that the construction company, the only other person interested, must have paid such transportation, or else that the railroad company transported the men free; that Ruppelius arranged with the agent of the Mexican railroad at Hermosillo for the transportation of these eighty laborers in a special car by telling the agent that the men were going to Nogales, Arizona, for the purpose of asking work from Holler & Co., and that they were employed by Grant Bros. Construction Company at Cochise; that as to the forty-five laborers for the subsequent importation of whom from Hermosillo this action was brought, Carney issued a pass from Lomas, Mexico, to Naco, Sonora, and charged the pass to the "account of Grant Bros. Construction Company," which pass was recognized by the railroad company and charged by it to construction account; that neither Carney, Holler, nor Ruppelius paid for the transportation of any of the forty-five aliens from Hermosillo to Lomas; that for such transportation in a special car a pass was issued, reading "Cananea, Yaqui River & Pacific Railroad. Pass A.

Castaneda and forty-five laborers from Hermosillo to Lomas, account laborers,'' and argues that as the laborers could not mean the laborers of that railroad company the pass was issued and charged to the construction company by some arrangement with the construction company not in evidence, and that the jury were warranted in so inferring; that other records and passes relating to the transportation of these men are not to be found among the records and papers in the railroad's possession, as testified to by the officials; that at the time these forty-five laborers reached Naco one D. R. McDonald, an agent of the construction company, was there to receive them, and that Carney expected him to be there and had addressed a letter to him there, and that Carney had told Randall, his subordinate in charge of the forty-five men, that Randall was to deliver them to McDonald at Naco, who was to receipt for them and to take them to the construction company's camp; that Ruppelius, under the positive instructions of Carney, went several times to Hermosillo to ''scatter the word'' in that vicinity that laborers were wanted by Grant Bros. Construction Company.

Carney testified that he had received instructions by letter from the construction company to ship the men to Naco, and that the shipment of the forty-five men in question was the first shipment made under such instructions. McDonald, who was at Naco to receive the shipment of forty-five men, took them, by consent of the authorities, to dinner, for which he paid and charged the amount thereof to the construction company. Much other testimony was given, tending to show acts flagrantly violative of the act of Congress by Carney, Ruppelius, and others in connection with the importation of alien laborers, and much testimony, impracticable to condense, in relation to the failure of the records of the railroad companies in Sonora to show by whom the transportation of such laborers in Mexico was paid.

On the part of the construction company, Angus Cashion testified that, at the time of making his contract with Carney, he said to him, ''Under no conditions do you want to go into old Mexico and employ any laborer; we don't want you to solicit or talk to a man on the Mexican side''; that Nogales, Arizona, was supposed to be a good labor market. James A. Cashion, vice-president and general manager of the company,

testified that on October 25th he asked Carney, "Where are you getting the men," and that he said, "In Nogales," and that he thereupon said, "You want to be sure that you get them on the American side; we don't want you to get a man on the Mexican side; we don't want you to offer him any inducements of any description, and I further instruct you not even to talk to a man regarding labor on the Mexican side." On cross-examination by the defendant, Carney testified that Angus Cashion said to him, "You know the immigration laws; you know all these things, and whatever you do, you must get men on the American side, and not go into Mexico for men, nor do anything in any way that would *complicate* us in this matter." Both the Cashions testified that they had no knowledge whatever of any employment of any Mexicans in Mexico or of any attempt on the part of Carney or of any of his associates in any way to violate the act in question; that they did not authorize the issuance of any passes in Mexico, and had no arrangement with any Mexican railroad to pay for any transportation of any of these laborers, and that it was not their intention or the intention of the construction company that there should be any violation of the act. In explanation of the statement of Carney that he had received instructions from the construction company to ship laborers to Naco, the construction company itself put in evidence the letter referred to by Carney, as defendant's exhibit 2. This letter reads as follows:

"W. W. Carney, Nogales.

"Dear Sir: As it is slow and expensive getting men in by Kelton and as the most work is near Naco, we think you had better ship to that point. See if you cannot provide the men with some kind of a card or paper from the immigration office that will allow them to cross the line at Naco, they can then easily walk eight miles to our first camp.

"Yours truly,

"GRANT BROTHERS CONSTRUCTION COMPANY,
"By C. E. P."

On this state of this long record, which we have but partially summarized, the defendants claim that, in view of the uncontradicted facts of the instructions by the Cashions to Carney not to violate the law, the evidence on the part of the plaintiff tending to show knowledge of such violation on the

part of the construction company is so inadequate and meager that the verdict and judgment based thereon cannot be allowed to stand. The contention of the United States, the appellee, is that the contract between the construction company and Carney was entered into by a vice-principal of the appellant under such circumstances that the very conversation which resulted in and constituted the contract charged him with notice that violation of the law, as charged in the complaint, would necessarily or very probably be committed by Carney, or agents, acting by virtue of such contract; that the proof is ample to show the acquiescence of the construction company in these unlawful actions, and that it received the benefits of such unlawful actions under such circumstances that the construction company's knowledge thereof could properly be inferred, and that there is in the record such proof of the ratification of these unlawful acts; that the acquiescence in them for such a length of time and under such condition of circumstances, with the reception by the appellant of the benefits of these unlawful acts, constituted a ratification thereof.

We think that, though the fact of the instructions given by Cashion to Carney not to solicit men on the Mexican side is unquestioned, such instructions are important only if made in good faith and if they be not merely colorable, and that the question of the good faith of such instructions so given was one for the jury, provided the evidence on the part of the United States as to the surrounding circumstances and conditions and the knowledge of such conditions by the two Cashions was such that they either knew of the intended and actual violation of the law, or was such that they willfully and intentionally ignored facts and circumstances known to them, which would have led to such knowledge. The evidence of the plaintiff standing by itself, without the denials on the part of the officers of the construction company, seems to us sufficient to warrant the trial court in the submission of the case to the jury upon the question whether or not the construction company had such knowledge of the facts and circumstances as to warrant a verdict that they were guilty of encouraging or assisting the migration or importation of contract laborers. Upon the denials of the construction company's officials of any such knowledge or any intention to vio-

late the law, it became a question of fact for the jury to determine both the truth of such denials and also whether or not such instructions were given in good faith.

As an appellate court, we may not review the weight of the evidence or determine what interpretation we should put thereon, or what verdict we should render upon the facts. Our province here is simply to determine whether or not there was sufficient evidence in the record of knowledge to warrant the jury in arriving at their verdict. In a case of this character, where the evidence of knowledge must depend upon the facts and circumstances as testified to by the witnesses, and where direct evidence of knowledge or intent is not obtainable by the plaintiff, it is often impracticable to select any particular fact or circumstance from the record which shall in itself establish the ultimate fact sought to be reached, whereas a number of circumstances, each one insufficient in itself to establish the fact, may, when taken together, lead, and correctly lead, to the conclusion that the fact has been established. In such a case it is peculiarly the province of the jury, who have the witnesses before them and may judge of their manner and demeanor, to pass upon the question of whether or not all the facts taken together satisfy a reasonable mind of the truth of the claim, rather than for the appellate court to substitute its judgment for that of the jury. The court in the case before us charged the jury that, in order to entitle the plaintiff to recover the penalty, the evidence introduced at the trial, all taken together, must be such as clearly satisfies the jury of the truth of the acts with which the defendant is charged, and that if, after weighing all the evidence, the jury were not clearly satisfied that the defendant caused or procured the acts in question to be done, that then their verdict should be for the defendant. Under this charge the jury, weighing all the evidence in the case, have come to the conclusion that the evidence does clearly satisfy them thereof, and we do not think that we are authorized to disturb the verdict.

In this connection it is to be noted that the construction company itself introduced in evidence the letter, defendant's exhibit 2, above referred to, for the purpose of explaining the statement of Carney that he had been instructed by the construction company to ship all laborers to Naco; but whatever

XIII Ariz.—26

the purpose, the introduction of the document in question by the defendant itself raised two questions for submission to the jury, first, as to the authority of the writer of the letter to bind the defendant company, and, second, the proper meaning and construction to be given to the letter. Under the evidence in the case, which it is not necessary to set forth, the question as to the authority of the writer of the letter to speak for the company became a question for the jury and not, as claimed by the appellant, a question for the court, if, indeed, the introduction of the letter by the defendant did not operate as a waiver of that contention; and, the letter having been properly admitted in evidence, the proper construction to be given to the language, as showing intent on the part of the construction company, became one peculiarly for the jury to determine under the facts and circumstances of the case.

This action was originally brought in the second judicial district. On April 16, 1910, six notices of intention of the plaintiff to apply to the clerk of the district court of the second judicial district for commissions to take six depositions of witnesses residing in Mexico, together with the interrogatories to be propounded to each witness thereto attached, were prepared and dated as of that day. On the 18th of April, 1910, and before service of the notices to take the depositions had been made, the defendant construction company applied for and obtained an order from the court for a change of venue to the first judicial district, and on the twenty-first day of April, 1910, filed the undertaking necessary to effectuate the transfer of the cause to the first judicial district. The notices to take the depositions were served on the twenty-second day of April, one day after the order of transfer had become effectual, but before the record and papers had actually been transferred. The defendant company made no effort to file any cross-interrogatories, either with the clerk of the second judicial district or with the clerk of the first judicial district, and upon the expiration of the time specified in the notice to take depositions the plaintiff applied to the clerk of the first judicial district, to which the cause had then been transferred, and obtained commissions upon which the depositions of the witnesses were taken and returned to the court. At the trial the defendant company moved to suppress the depositions for want of due notice and the denial of

that motion by the trial court is urged as error. The purpose of giving notice of the taking of depositions, as required by the statute, is that the opposite party may be advised of the application for the commission to take the depositions, and that by the service of the interrogatories attached thereto they may be advised of the nature of the questions to be propounded, and thereby be given an opportunity to frame such cross-interrogatories as may be desired.

While the notice to take depositions in this case stated that application would be made to the clerk of the second judicial district, prior to the time of such application the cause had actually been transferred to the first judicial district upon the defendant's own application. The court in the second judicial district having lost jurisdiction, and jurisdiction having attached to the court of the first judicial district, the defendant knew that the only place where application could be made pursuant to the notice was to the clerk of the first judicial district, and not to the clerk of the second judicial district. The defendant was fully advised of the intention of the plaintiff to apply for the issuance of the commission, was served with the interrogatories to be propounded to the witnesses; the change of venue having been made upon its own motion and upon the giving by it of the undertaking required, it was certainly advised of the fact of the change, and that the only place from which the commission could issue was from the office of the clerk of the court to which the case had been transferred; it therefore had full opportunity to file any cross-interrogatories that might be desired, and we do not believe it was necessary or fatal to the issuance of the commission that new interrogatories and new notices, specifying the clerk of the court to which the cause had been transferred, were not prepared and served.

It is further urged that the depositions were not properly attested as returned to the court in that the postmaster did not indorse the envelope "that he received them from the hands of the officer before whom they were taken," and that the commissioner did not write his name across the seal of the envelope in which the depositions were returned. If without the observance of these formalities there was not a substantial compliance with the statute, the objection nevertheless had been waived by the appellant. The irregularities complained

of appeared upon the exterior of the envelopes. The envelopes in each instance were opened before trial, as appears by the certificate of the clerk, upon the request of the counsel for the construction company. Inasmuch as it was not necessary to open the envelopes to ascertain the existence of the irregularities complained of, the opening thereof at the request of the defendant's counsel was a waiver of any irregularities in their transmission. *Killian* v. *Augusta R. R. Co.,* 78 Ga. 749, 3 S. E. 621.

It is further urged that the trial court erred in admitting in evidence statements made by the associates and employees of Carney, on the ground that such statements were hearsay, and not binding upon the defendant company. The agreement between Carney and the construction company contemplated that Carney should have the assistance of others in procuring laborers for the construction company, as in the conversation at the time of the making of the agreement it was stated that Carney intended to open offices in various cities along the Mexican line, and it was known to the construction company that Carney had no office in Arizona. The plaintiff upon the trial had two things to prove: First, that the importation of contract laborers into the United States had been assisted or encouraged, and that as a result of such assistance and encouragement such laborers had migrated to the United States; and, secondly, that the defendant had knowingly assisted or encouraged such migration or importation. To prove the first fact, it was proper to show the solicitations and representations made to the laborers to induce them to migrate to the United States, and that in fact it was such statements and solicitations that caused them to come. Therefore, the statements of Carney and of his assistants were material and relevant as showing the acts done by them in pursuance of the contract between the construction company and Carney. The evidence was not received, as seems to be claimed by the appellant, to establish the extent of authority of the agent of the corporation, but to show the illegality of the migration of the laborers, and that one of the inducements to the laborers to come was that such acts had been done on behalf of the construction company. Such statements were admissible, not as evidence of the agent's authority, but to show the acts which the agents did in the

course of their employment.   The fact that the evidence may also have tended to show knowledge on the part of the construction company does not, under the doctrine of multiple admissibility, render the evidence inadmissible because it may have tended to show such knowledge.   The trial court did not err in receiving the evidence complained of.

It is further urged that the trial court erred in admitting in evidence the decision of the board of special inquiry of the United States immigration service held at the office of the inspector in charge at Naco, Arizona, in relation to the status of the forty-five laborers in question, the board having officially determined thereby that the forty-five men in question should be excluded from admission to the United States as alien contract laborers; the objection being that by this certificate and action of the board the status of the forty-five men as aliens could not be established.   We think the determination and decree of a competent tribunal of the government, established for the purpose of ascertaining the status of a person applying for admission, as to whether he is an alien or not, is relevant and competent evidence of such status. *United States* v. *Hills* (D. C.), 124 Fed. 831.

Numerous errors have been assigned with respect to the refusal of the trial court to give certain instructions and in the giving of other instructions by the court.   We do not think it necessary to set forth in detail the alleged errors complained of.   With respect to the instructions that the trial court refused to give at the defendant's request, they are in each instance either inconsistent with the facts as developed upon the trial, or the matters contained therein were covered by the court in its charge.   With respect to the correctness of the charge as given, we think, after a careful examination of it, that it fully and fairly stated the law in the case, and set forth with particularity and clearness the necessary requirements that must first be met by the plaintiff before the jury could find a verdict against the defendant in the case, and that the defendant has no cause to complain that its rights and immunity from liability under its contention as to the facts were not fully and carefully explained to the jury.

It is further claimed that the trial court erred in assessing costs against the defendant, as the statute makes no provision

therefor. In such a case as this, costs follow as a matter of course to the successful party.

We find no error in the record, and the judgment of the district court is therefore affirmed.

LEWIS and DOE, JJ., concur. DOAN, J., deeming himself disqualified, took no part in the consideration of this case.