[Civil No. 4379.   Filed January 19, 1942.]

[121 Pac. (2d) 429.]

PHOENIX TITLE & TRUST CO., Administrator de Bonis Non With the Will Annexed of the Estate of Will P. Isley, Deceased, and BERLIE I. ROBART, Individually, Appellants, v. ELLA ISLEY KING, Appellee.

Messrs. Hayes & Allee, for Appellant Phoenix Title & Trust Co.

Messrs. Stanford & Stanford, for Appellant Berlie I. Robart.

Messrs. Langmade & Langmade, for Appellee.

LOCKWOOD, C. J.—This is an action brought by Ella Isley King, plaintiff, to require Berlie I. Robart, defendant, to account to the estate of Will P. Isley, deceased, for the sum of $5,000. The material facts necessary to a disposition of the case are not seriously in conflict and may be stated as follows:

Will P. Isley died June 6, 1939, leaving a holographic will dated June 30, 1934, which provided for

a number of specific legacies, and then concluded as follows:

"to Berlie I. Robarts my oldest girle by Willie Jones Isley—I make my legal administrator with out Bond I give her all rites to all my Personal Propertey to Dispose of as she sees fit & to pay the others as I hav stated after all Debts are Paid. What ever moneys if any are left She is to Divide eakoley with Ella King my Oldest Girl providin Ella is still single in case Ella is married a gin She Only is to have One third of the money—that is left after all Debts are Paide."

It is admitted that the Ella King named in said will is the plaintiff in this action. At the time the will was executed deceased had two bank accounts, a checking one in the First National Bank of Arizona, which was opened by him in 1926, and a savings account in the Phoenix Savings Bank and Trust Company, which was started before 1918. On the date the will was made deceased authorized defendant to make withdrawals from the open account. On September 7, 1934, deceased and defendant went to the Phoenix Savings Bank and Trust Company and had the savings account changed to a joint account. They each signed a depositor's card which read as follows:

"We, the undersigned, having opened a joint account with the above named bank, hereby agree that all moneys deposited by us, or either of us, in said account, together with the increase thereof shall be placed to the credit of us jointly and may be withdrawn from or paid out by said bank, upon the request or order of both or either of us; and also that upon the death of either of us, the survivor shall have the absolute right to withdraw or be paid all moneys then remaining to our credit in said account, and the receipt of either of us or the survivor of us and payment thereof shall discharge said bank from liability to either of our heirs, executors and administrators. It is understood, however, that no withdrawals drawn

in that account by the survivor will be honored until evidence is furnished that the inheritance tax is paid or arrangements made to pay the same in accordance with the requirements of law. We also agree to be governed by the by-laws, copy of which is in our pass book, in regard to all deposits we may have with the said bank.''

After this change of the savings account was made no withdrawals therefrom were made except an amount equivalent to the semi-annual interest, as it accumulated, and one withdrawal of $1,000 made in February, 1938. All these were made by deceased. The ultimate result was that the account, which amounted to $6,000 when it was changed from a separate account of deceased to a joint one of himself and defendant, was reduced to $5,000 at the time of his death.

The day after he died defendant, as the surviving joint depositor, withdrew the entire balance remaining in the savings account and ever since that time has treated it as her individual property. Thereafter his will was duly probated by defendant. Application was made to the estate tax collector of the State of Arizona, as provided by law, for the immediate transfer of bank deposits, in which defendant stated that deceased was the owner or joint owner of the two bank accounts above referred to, and that he had made no gifts nor transfers within the five years immediately preceding his death.

The case came on for trial before the court sitting without a jury. It was the theory of plaintiff that both bank accounts belonged to the estate of deceased and that defendant was, therefore, bound to account to such estate for both of them. It was the contention of defendant that the $5,000 savings account was her property, by reason of the action of deceased before his death. In support of this contention she

offered evidence that her father had stated, in substance, at the time the savings account was made joint, that if she survived him she should have it in payment of a debt which he owed her for services which she had rendered as his daughter in caring for him. The court rejected this testimony. Nate Smith testified to the effect that deceased had stated to him shortly after he made his will:

"A. He said he was going to fix it so that Berlie, his daughter, would get what he had in the bank. He said he wasn't going to leave anything to the rest of the damned brats; he said he had done for them all he was going to do.

"The Court: He said what?

"A. He said he was going to fix it so that Berlie would get what he had in the bank and he said he didn't want any of the rest of the damned brats to get any of it because he had done enough for them."

There was also other evidence to the effect that defendant had cared for him on a number of occasions when he was ill. The trial court made findings of fact and rendered judgment as follows:

"And it appearing that upon the death of Will P. Isley a savings deposit with the Phoenix Savings Bank & Trust Company belonging to said estate came into the possession of Berlie I. Robart individually and as Executrix of his estate she failed to account therefor and has retained and treated the said money as her own, and it

"Further appearing that the plaintiff and defendant as residuary legatees, under the last will of Will P. Isley, deceased, are entitled to share in said $5,000 equally, share and share alike;

"*It Is Therefore Hereby Ordered, Adjudged and Decreed* that said Berlie I. Robart account for, return and pay over to the estate of Will P. Isley, deceased, the sum of $5,000.

"*It Is Further Ordered, Adjudged and Decreed* that the plaintiff have and recover of the defendant, Berlie I. Robart individually, and Berlie I. Robart,

Executrix of the Estate of Will P. Isley, deceased, the sum of $2,500.00.

"*It Is Further Ordered* that the judgment against Berlie I. Robart as Executrix shall be paid in due course of administration as an allowed claim and no execution shall issue."

Whereupon this appeal was taken. After the appeal was taken Robart was removed as executrix, and the Phoenix Title and Trust Company was appointed as administrator *de bonis non,* with the will annexed, of the estate of deceased, and was substituted for Robart as executor on the appeal and permitted to, and did, file a brief herein. The appeal is, therefore, a triangular one.

It is the contention of plaintiff that the judgment should be affirmed *in toto.* It is the position of defendant that it should be reversed and judgment rendered in her favor, and of the Phoenix Title and Trust Company that the judgment should merely go to the extent of requiring defendant to account to the estate for the $5,000, omitting all reference to what should be done thereafter.

■ The first question for our consideration is whether the court erred in refusing to allow defendant to testify as to conversations between herself and her father at the time the joint control of the savings account was established, in which he stated, in substance, that he wished her to have what was left therein after his death. Section 4414, Revised Code 1928, 23–105, Arizona Code 1939, reads as follows:

"*Limitations to testimony in actions by or against personal representatives.*—In an action by or against executors, administrators or guardians, in which judgment may be rendered, for or against them as such, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate or ward unless called to testify thereto by the opposite party or required to testify

thereto by the court, and the provisions of this section shall extend to and include all actions by or against the heirs, devisees and legatees or legal representatives of a decedent arising out of any transaction with such decedent.''

We think it was discretionary with the court thereunder as to whether defendant should have been permitted to offer this testimony. *Johnson* v. *Moilanen,* 23 Ariz. 86, 201 Pac. 634; *Goldman* v. *Sotelo,* 7 Ariz. 23, 60 Pac. 696; *Costello* v. *Gleeson,* 15 Ariz. 280, 138 Pac. 544. However, the testimony of the witness Nate Smith, which was admitted, is to the effect that it was the desire and intention of deceased that defendant should have the savings account deposit as her own separate property if she survived him, and we assume the trial court found this to be the fact.

The legal question before the court is whether the method which he took to carry out his wishes had that effect as a matter of law. The case presents the not unusual situation where the owner of property desires to determine its disposition before his death but to postpone the taking effect of such disposition until afterwards. There is a great deal of misunderstanding among the laity, and even some members of the profession, as to how this may be done. The case of *McNabb* v. *Fisher,* 38 Ariz. 288, 299 Pac. 679, 681, lays down the law on a situation much like that found herein very completely as well as concisely, as follows:

'' . . . we think the deduction made from the decisions upon that question by the author in 28 Corpus Juris, 664, § 64, is about correct. It is as follows:

'' 'Where a person deposits money in a savings bank to the credit of himself and another, and payable to the order of either or the survivor of them, with the intention of making a gift, such deposit vests in the donee a joint interest with the depositor in the fund, and upon the death of the depositor the survivor

is entitled to the amount then on deposit. The controlling question always hinges upon whether the owner of the money intended to make a gift, or whether the account was entered in joint form for other purposes. The intention to make a present gift of a joint interest in such deposit may appear in the statement of the depositor, or it may be shown by his acts and the attendant circumstances. *The mere opening of a joint account, each having an equal right to draw, does not, in and of itself, establish a gift.'*

"As indicated, the intention of the depositor is controlling. If the intention to make a gift is clear, definite, and certain, the courts have not permitted a divided control of the deposit to defeat the gift. Sometimes intention may be gathered from the statement accompanying the deposit and sometimes from the acts of the parties and the attendant circumstances. This vital point must depend upon the particular facts in each case.

.  .  .  .  .  .  .  .  .  .  .  .

"If, however, it be granted that the donative language of the father imported an intention on his part to give outright to the son some interest in the deposit, at most it would consist of that portion left after the father's death. *If the intention was that the gift should take effect only after the death of the father, it would be ineffectual, because that would be an attempted testamentary disposition of property, which can be accomplished only by means of a valid will.* [Citing cases].

"It is significant that the son laid no claim to the deposit until after the father's death, and only drew checks against the fund to meet his father's needs. If he ever drew a check for his personal needs before his father died, it is not shown by the record.

"John Fisher was an old man, with no means to live on other than this bank account. It is not reasonable to assume that he would deprive himself of this sum by giving it to his son outright. Of course he could have done such a thing, but the evidence falls far short of showing that he did, or intended to do, such a thing. On the contrary, it quite conclusively shows that the father at most intended the son to have, if anything, what might be left at his death.

It was not intended as a gift *in praesenti* to the son, and must fail as a bequest, if such were intended, for the reason above stated." (Italics ours.)

In order that the undoubted intention of Isley that defendant should eventually have what remained in the savings account after his death could take effect legally, the gift which he intended to make to his daughter must have been executed by delivery, and vest an irrevocable title upon such delivery. In other words, it must have been of such a nature that Isley could not during his lifetime change the disposition of the fund. The trial court must have necessarily found, and there is ample evidence to sustain such a finding, that he had no intention of making an executed gift *inter vivos*, but that it was to take effect only if, as, and when he died before defendant, and, as we have stated, this cannot be done in the manner adopted by Isley. See, also, *Scoville* v. *Vail Investment Co.*, 55 Ariz. 486, 103 Pac. (2d) 662. Defendant, therefore, had no right to the savings account deposit since it, under the law, became a part of the estate of Isley immediately upon his death, and having taken possession thereof, she is bound to account for it to his estate.

We think, however, that that portion of the judgment allowing plaintiff to recover any sum as against defendant either individually or as executrix was erroneous. Plaintiff's right was merely to one-half of the residue of the estate of Isley after it had been finally settled, and such right existed against the estate and not against defendant personally, nor as executrix since she had been removed in the latter capacity. The judgment is, therefore, modified to read:

*"It Is Therefore Ordered, Adjudged and Decreed* that said Berlie I. Robart account for, return and pay

over to the estate of Will P. Isley, deceased, the sum of $5,000, and that plaintiff have and recover her costs expended in the superior court in the sum of $36.45.''

Since the judgment is modified in favor of defendant she will recover her costs in this court.

As so modified, the judgment of the lower court is affirmed.

McALISTER and ROSS, JJ., concur.