John RODRIGUEZ, Jr., for Himself and as Next Friend of Frances Rodriguez, an Incompetent, and Anita Perez, Appellants,

v.

John RODRIGUEZ, Jr.; Byrne, Green, Benton & Case, a Partnership; and Peter C. Byrne, Joe L. Green, F. Keith Benton, and Williby E. Case, Partners, Appellees.

No. 17589.

United States Court of Appeals Ninth Circuit.

Nov. 20, 1962.

Di Leonardo, Blake, Kelly, Aguilar and Leal, Sunnyvale, Cal., Shortridge and Quisenberry, and Dean Estep, Phoenix, Ariz., and Walter E. Rankin, San Jose, Cal., for appellant.

Moore, Romley, Killingsworth and Kaplan and John H. Killingsworth, Phoenix, Ariz., for appellee.

Before HAMLEY and KOELSCH, Circuit Judges, and TAYLOR, District Judge.

FRED M. TAYLOR, District Judge.

Appellants and the Appellee, John Rodriguez, Jr., are the children and heirs at law of John Rodriguez, Sr., deceased. Appellants brought this action to recover their share of property allegedly owned by their father at the time of his death on February 24, 1959. It is a diversity of citizenship action instituted in the United States District Court for the District of Arizona under the provisions of Title 28 U.S.C.A. § 1332, appealed to this Court under the provisions of Title 28 U.S.C.A. § 1291.

At the hearing before this court, counsel for the respective parties agreed that in order for the appellee John Rodriguez, Jr., to prevail, it would have to be on the theory that a valid gift inter vivos was made by his father to him.

Prior to the death of John Rodriguez, Sr., he and one Conrad B. Molina were equal partners in a business known as "The Plantation Bar". Due to the serious illness of Rodriguez, Sr., he and his partner, Molina, sold the bar business to A. A. Amusement Co. under the terms of an agreement dated January 15, 1959, for a total sum of $30,000. The agreement provides, among other things, for the payment of $15,000 down upon the execution of the agreement, such sum to be held in escrow as the agreement provides and at the close of the escrow to be delivered to John Rodriguez, Jr., of 1084 Seventh Avenue, Yuma, in full payment to John Rodriguez, Sr., for his interest in and to said property sold. The agreement also provides that buyer's check for $15,000 payable to John Rodriguez, Jr., be placed with the law firm of Byrne, Green, Benton & Case, as escrow agent, to be delivered to said John Rodriguez, Jr., at the close of the escrow. The agreement is silent in regard to the disposition of the check or the money therefrom after John Rodriguez, Jr., received it. The closing of the escrow was conditioned upon the transfer of a liquor license and the procuring of a lease by buyer. On April 2, 1959, the escrow was closed and the $15,000 was disbursed by the escrow agent as directed by appellee Rodriguez, Jr., to creditors of the deceased, for expenses of his last illness and for funeral expenses. The balance of said $15,000 was paid to appellee, John Rodriguez, Jr. After his refusal to give appellants their claimed share of the money this action was instituted.

The intent and purpose of the deceased in providing for the payment of the $15,000 to appellee Rodriguez, Jr., can be discerned only from the testimony. It is revealed by the testimony of the appellee that he understood the $15,000 was to be delivered to him for the purpose

of paying his father's obligations, including hospital and doctor bills incurred by him for his father, and that any amount remaining was for him.[1]

Although the evidence indicates that Rodriguez, Sr., desired that appellee have and receive whatever money remained after the payment of the father's obligations, hospital and doctor bills, we do not believe the deceased made a valid gift inter vivos to the appellee John Rodriguez, Jr. It is clear from the evidence that the money paid to appellee John Rodriguez, Jr., from the sale of the bar business was to be used primarily for the benefit of Rodriguez, Sr. Due to the serious illness of Rodriguez, Sr., and the uncertainty in connection therewith most, if not all, of the money realized from the sale of the bar business might have been used prior to and at the time of his death. In any event, the amount, if any, to be left to appellee on the death of Rodriguez, Sr., was most indefinite and uncertain. It is reasonable to conclude that the intention of Rodriguez, Sr., was to make a gift to his son of whatever money was left to take effect on his death. This does not constitute a gift inter vivos but is an attempted testamentary disposition of property which can be done only by means of a valid will. A gift inter vivos must have certain essential elements in order to be valid. They are that the donor must manifest a clear and unmistakable present intention to give property to the party claiming it as donee, and that while living the donor must pass to the donee (or to a third person for the donee) the possession and control of the property or thing given. All of these essentials must be present

1. Testimony of appellee John Rodriguez, Jr.

"Q. Were you aware that the contract for the sale of the Bar provided that the $15,000.00 which he was to receive for his share was to be paid to you upon the close of escrow?

"A. Yes.

"Q. Had you discussed this with your father?

"A. He had discussed it with me.

"Q. And do you know the reason why this $15,000.00 was to be paid to you?

"A. Well, he wanted me to take care of all his financial [33] business, I mean, take care of all the bills he had, and hospital bills and doctor bills.

"Q. In other words, you were to use this $15,000.00 for his benefit?

"A. Yes.

"Q. And this was your understanding with your father at the time the sale was entered into?

"A. Yes * * *

"Q. And what did you tell them with regard to the sale at that time?

"A. That I was to get the balance of the money, and it was to be for me, I mean, after paying all the bills, I was supposed to get the money. * * *

"Q. Now, this $15,000.00 between the time the sale was—the contract for the sale of the property was executed on January 15th, and the time that your father died, it was your [36] understanding with your father that you were to take this $15,000.00, and use it for your father's benefit?

"A. Yes.

"Q. And for his retirement, for the payment of his medical expenses, any expenses that might arise?

"A. Yes, while he was alive, yes.

"Q. While he was alive?

"A. Yes.

"Q. And when you discussed this with your brother John after the funeral, did you tell him that this was the purpose for having the money turned over to you in the escrow agreement?

"A. Yes, I discussed it, I was supposed to pay all the bills, and after that I was supposed to keep the balance. We didn't expect my dad to die so quick, but my dad had told me I was supposed to get the money.

"Q. To be used for his benefit, though?

"A. And anything left over was for me.

"Q. But if there was nothing left over, then you would not get anything?

"A. No. * * *

"Q. Now, when was it that your father discussed with you about this $15,000.00 that he was to receive out of the sale of this property? When did he discuss that?

"A. When he sold the bar, and he started the escrow on the bar, I mean, the sale of the bar.

"Q. What did he say to you?

"A. He wanted me to have it, and as soon as I got it, pay all the debts he owed, and then pay all the doctor bills, and if there was any way of taking him to the hospital to specialize in cancer, take him there, and pay all the bills out of that."

in order to constitute a valid gift inter vivos. McNabb v. Fisher, 38 Ariz. 288, 299 P. 679 (1931); Allred v. Allred, 57 Ariz. 77, 111 P.2d 68 (1941); Goff v. Guyton, 86 Ariz. 349, 346 P.2d 286 (1959); Phoenix Title & Trust Co. v. King, 58 Ariz. 477, 121 P.2d 429 (1942).[2]

The facts in the case of Scoville v. Vail Investment Co., 55 Ariz. 486, 103 P.2d 662, relied on by appellee are not analogous to the facts in the case here. In the Scoville case the property was definite and the donor did transfer irrevocable control over it during her lifetime. Essential elements necessary to constitute a gift inter vivos were found present in the Scoville case that are not to be found in the case here.

Here we have evidence of an intention to give in the future on the part of the donor and a transfer of possession, but we do not have a transfer of irrevocable title to or control over any specific property or amount of money. The claimed gift is not sustained by clear and satisfactory evidence of all of the elements necessary to constitute a gift inter vivos. Consequently we hold that Rodriguez, Sr., did not make a valid gift inter vivos and that the money in question became a part of his estate at the time of his death.

The cause was tried in the trial court on the premise that appellants were proper parties to institute the action. Since we are reversing the trial court it may be necessary for that court to determine whether appellants were the proper parties to institute the action and, if they are, it must be determined what amount they are entitled to recover from appellee Rodriguez, Jr.

We agree with the trial court that the escrow agents Byrne, Green, Benton & Case concluded the escrow according to its terms and conditions and that there is no liability on the part of said appellees or any of them.

The judgment is affirmed as to appellees Byrne, Green, Benton & Case and reversed as to appellee John Rodriguez, Jr. The cause is remanded for further proceedings consistent with this opinion.

2. The case of McNabb v. Fisher, supra, appears to be a leading case in Arizona on the requisites for a gift inter vivos. There an aged father and his son had opened a joint bank account, the money being furnished by the father, with the understanding that it should be used for his care, and any left at the father's death should belong to the son. The court in holding that this did not constitute a valid gift inter vivos said:

"* * * Essential elements of a gift are that the donor manifest a clear and unmistakable intent to give the property to the party claiming as donee, and that he pass to the latter before his death the possession and control of the thing given. Mere intention to give is not enough, nor is change of possession or control; these must concur." [299 P. pp. 679-680]

"If, however, it be granted that the donative language of the father imported an intention on his part to give outright to the son some interest in the deposit, at most it would consist of that portion left after the father's death. If the intention was that the gift should take effect only after the death of the father, it would be ineffectual, because that would be an attempted testamentary disposition of property, which can be accomplished only by means of a valid will. * * *" [p. 682]

"* * * when a claim of a gift is not asserted until after the death of the alleged donor, it should be sustained by clear and satisfactory evidence of every element requisite to constitute a gift. * * *" [p. 682]

In Phoenix Title & Trust Co. v. King, supra, the Arizona court after quoting at length from McNabb v. Fisher, supra, held:

"In order that the undoubted intention of Isley [the decedent] that defendant should eventually have what remained in the savings account after his death could take effect legally, the gift which he intended to make to his daughter must have been executed by delivery, and vest an irrevocable title upon such delivery. In other words, it must have been of such a nature that Isley could not during his lifetime change the disposition of the fund. The trial court must have necessarily found, and there is ample evidence to sustain such a finding, that he had no intention of making an executed gift inter vivos, but it was to take effect only if, as, and when he died before defendant, and, as we have stated, this cannot be done in the manner adopted by Isley. * * *" [121 P.2d p. 433]