INDUSTRIAL TRUST COMPANY *vs.* EDWARD F. TAYLOR, *Admr. et al.*

MARCH 8, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker & Condon, JJ.

CONDON, J. This is a bill of interpleader to determine the ownership of a bank account with the complainant, Industrial Trust Company, in the names of William Taylor and Martha McNabb. The superior court entered its decree ordering the respondent Edward F. Taylor, administrator of the estate of the aforesaid William Taylor, deceased, hereinafter referred to as the appellant, and the aforesaid Martha McNabb, only daughter of the deceased, hereinafter referred to as the appellee, to interplead. The appellant and appellee accordingly filed answers and the cause was thereupon heard orally by a justice of the superior court who duly entered a decree that the appellee

was entitled to the account. From that decree the appellant has appealed to this court.

The appellant sets out in his reasons of appeal that such decree is against the law and the evidence and the weight of the evidence. In support of such reasons he contends that the justice of the superior court failed to follow the law applicable to the case; that the evidence fails to show that William Taylor made a completed gift to the appellee of a joint interest in the disputed bank account to take effect in his lifetime; and, finally, that the trial justice's rescript shows that his decision is clearly contrary to the great weight of the evidence. These contentions may be reduced to two: First, that the trial justice committed an error of law in not applying the correct rules of law to the case; and, second, that his decision on the evidence is clearly wrong and should be reversed. We shall consider those points in that order, but before doing so it may be helpful if we state briefly the substantial facts out of which this cause arose.

William Taylor died suddenly at his place of employment on September 3, 1940. He left surviving him four sons, Edward F., John, James and William Taylor, and a daughter Martha McNabb. Only William and Martha were living with their father at his home in Phillipsdale, East Providence. The other children were married and maintained their own homes.

Martha McNabb gave up her own home in Pawtucket and also her employment late in 1932, at her father's express request, and came to live at his home, in order to care for her mother, who was then in the last stages of a long illness, of which she died on March 7, 1933. Martha's husband had died in 1929, leaving her and a daughter Mary surviving him. After her mother's death, she continued to live with her father and took care of his home until his death. During this period, she, herself, was not always in good health and her father appears to have shown concern about her future. It also appears that he was interested

in the future of her daughter Mary and assisted her financially in obtaining a business education, and later helped her to obtain a position in the office of the industrial plant where he was employed.

William Taylor manifested his interest in the financial welfare of his daughter in a more substantial way a short time after his wife's death. On May 29, 1933, he opened the bank account in dispute here in the names of William Taylor and Martha McNabb, "payable to either or to the survivor." A little later he accompanied his daughter. to the bank and asked her to sign her name to a card on which the bank kept the items of the account. She signed the card and he then handed her the bankbook and told her it was hers. She took it home and kept it for several years thereafter in the drawer of a dresser in her room. Later, at his suggestion, it was kept in a safe deposit box belonging to him. This box was in his den and each of them had access to it. Martha never deposited any of her own money in the account and she never withdrew any therefrom for her own purposes. She did, however, make two withdrawals for other purposes. Her father made a number of withdrawals which were used to pay premiums on life insurance which he had taken out for her benefit.

What her father intended by these acts is the controversy which the justice, who heard this cause in the superior court, was called upon to determine. To aid him in the performance of this duty the parties introduced a great deal of testimony and some documentary evidence. Much of it, however, appears to be of very little, if any, value in deciding what was the intention of William Taylor at the time he opened the account and gave the bankbook to his daughter. The trial justice seems to have sensed this and, as a consequence, confined his consideration to such evidence as had some probative value in the determination of the precise question before him.

It also appears that, in his consideration of the evidence, he recognized that it was incumbent upon him to weigh

all of such evidence against as well as that in support of the form of the account. In other words, he correctly conceived the law to be that the form of the account subsisting at the death of the alleged donor was entitled to weight in determining the donative intent, although it was not controlling in the face of competent evidence tending to show a contrary intent. Moreover, it is clear from his rescript that he recognized that the burden was upon the appellee to prove a gift to her of an interest in the account. Those rules of law are not disputed here and are well established by our decisions most of which were recently reviewed in *Peoples Savings Bank* v. *Rynn,* 57 R. I. 411.

The contention of the appellant that the trial justice did not apply these rules is not borne out by a careful reading of his rescript. On the contrary, we are of the opinion that he not only acknowledged their applicability to the evidence before him but that he also actually applied them in coming to his decision for the appellee. In this respect, therefore, he did not err as contended by the appellant.

This brings us to the appellant's second contention that the findings of the trial justice are clearly wrong. In support of this reason of appeal the appellant argues that the appellee failed to establish a completed gift to her of an interest in the bank account *in praesenti* because all deposits in the account were made by William Taylor and none by appellee; all withdrawals, except two, which were made by appellee for his use, were made by him; appellee's conduct following her father's death was inconsistent with her present claim of ownership; the conduct of her father was inconsistent with the gift as alleged by appellee; her admissions on cross-examination were fatal to her claim; and, lastly, she never had access to the bank account.

We have carefully read the transcript and have considered the documentary evidence in the cause and we are of the opinion that no ground exists for holding that the trial justice was clearly wrong. We think that the conclusion to which he came is reasonable and can be supported by a fair

consideration of all the evidence. Whether or not a contrary conclusion might also be reasonably supported by the evidence we need not consider, since the decision of the trial justice cannot be disturbed unless it is clearly wrong.

That all the deposits in the account were made by William Taylor and that all withdrawals were made by him or for his benefit are not facts which of themselves would prove that he did not intend to make a gift to his daughter *in praesenti* of an interest in the account. Whether or not appellee had access to the account was the subject of conflicting testimony. The trial justice resolved this conflict, and we think correctly, in favor of the appellee. The conduct of the appellee and that of William Taylor which are alleged to be inconsistent with a gift to the appellee were also subjects of conflicting testimony. This conflict was likewise resolved in favor of the appellee. We cannot say that either finding is clearly wrong.

Only the claim of the appellant that the appellee admitted on cross-examination that she was not entitled to the account is deserving of discussion in some detail. The consideration of such alleged admission involves the testimony concerning a family conference at which appellee was questioned by a lawyer about the ownership of the disputed bank account.

In the afternoon of the day of their father's funeral the members of the family assembled for a conference at their father's home, which was attended by a lawyer who later became counsel for the appellant and testified in this cause. Apparently, upon the request of the appellant, the funeral director had recommended this lawyer to the family. He had not represented any of the family and had no acquaintance with any of them before that afternoon. At this conference the principal business at first undertaken was to search through the deceased's papers for a will. In doing so the box containing the bank account in dispute here was opened and the contents examined. Upon finding the account and observing that it was in the form of a joint ac-

count, payable to either or to the survivor, the lawyer proceeded to make inquiries of the appellee concerning it and what she understood to be her interest in it. Her understanding of his questions and her answers thereto were the subjects of some conflict in the testimony in the superior court.

The appellee testified in that court that she had not admitted at the conference that the bankbook was not hers. Her brothers and the lawyer testified substantially to the effect that she had made such admission. As to the testimony of the lawyer, she testified that she did not fully understand the questions which he had put to her at the conference, as she was at that time under great stress of emotion, was physically ill and had, just before the conference, taken medicine prescribed by her physician.

In our opinion, the only important testimony against the appellee, as to whether she had made admissions at the conference which were fatal to her claim, is that of the lawyer. If appellee was interrogated concerning the opening of the bank account, what her father said at the time, and what his understanding then was regarding her relation to the account on which he had caused her name to be placed, and if in her answers she had admitted that the account was to belong to her only after her father's death, there would have been a serious question for the trial justice to consider. But apparently he did not consider that the testimony of the lawyer presented the question in just that light.

In his rescript he has analyzed the evidence of what occurred at the family conference and has come to the conclusion that the interrogatories of the lawyer, addressed to the appellee at such conference, were fundamentally inquiries directed to what the appellee conceived to be her legal rights in the bank account, rather than inquiries designed to elicit facts that would tend to show what her father's intention was at the time he opened the account and gave her the bankbook. Thus viewing the evidence of her alleged admis-

sions, he concluded that she was confused and was thereby led to make statements at the family conference which amounted to no more than her opinion at that time of her rights.

The trial justice has informed us in his rescript of the value which he placed upon the credibility of the appellant and his witnesses and it appears therefrom that he was not favorably impressed by any of them except the lawyer who attended the family conference. As to this witness, the trial justice states that he is a respected member of the bar, but points out that there was a misunderstanding by the lawyer of appellee's answers to his questions, either due to her failure to comprehend them or because of her failure to express her mind clearly in her answers, or both.

He also found that the questions were designed to elicit from the appellee an opinion as to the legal status of and her rights in the account rather than to disclose facts that would throw light on the reason why her father had caused her name to be placed upon his bankbook in such form, and had then handed the bankbook to her. This sort of inquiry, the trial justice said, tended to confusion and he found that the appellee by her answers, properly understood, had thereby made no admissions that were really inconsistent with her claim. Apparently in coming to this conclusion he considered all of the testimony of the lawyer as well as the appellee's testimony on cross-examination and felt that it weighed little, if at all, against the appellee's claim, or possibly that he considered the lawyer's testimony was of such nature as to be wholly lacking in probative value on the real issue.

However he may have viewed such testimony, we are of the opinion that he did not err. This conclusion is based upon a view of the questions asked of appellee at the family conference and her answers thereto which corresponds to that expressed by the trial justice. While the lawyer, by the questions he propounded to the appellee at such conference, may have intended to elicit from her facts to which he could

apply the well-established law concerning bank accounts of this kind when made under like circumstances, it is apparent that the emphasis of the questioning was on what the appellee understood were her rights. This course of inquiry led to such a mixture of fact and opinion as to confuse the appellee, especially when we consider the state of her health at the time of the family conference and the circumstances under which it was held.

On this view, we think the trial justice was warranted in not relying on the lawyer's testimony. Therefore we cannot say that he was clearly wrong in following the appellee's testimony and other evidence in support of the form of the bank account, rather than following any supposed admission made by her on cross-examination.

The appeal of the appellant is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court.

*Huddy & Moulton,* for complainant.

*Martin M. Zucker, F. Harlan Flint,* for respondent Martha McNabb.

*Frank G. Shea, Francis J. O'Brien,* for respondent Edward F. Taylor.