ELMER E. WYNNE, *Admr. vs.* LUCY WYNNE.

JUNE 14, 1943.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J. This is a bill in equity substantially to require the respondent to pay over to the complainant, as administrator, certain moneys which were on deposit in a so-called joint account in a bank in Massachusetts in the names of complainant's intestate and the respondent, and which upon the former's death had been withdrawn by the respondent. After a hearing in the superior court upon amended bill, answer, replication and evidence a final decree was entered granting the relief prayed for in the bill. The cause is before us upon the respondent's appeal from that decree.

The complainant is the duly appointed administrator of the estate of Mary W. Wynne, alias Wynn, late of the city of Pawtucket, state of Rhode Island, deceased. Mary W. Wynne will sometimes be referred to as Mary and also as the depositor. The respondent, who is referred to in the evidence as Lucy D. Wynne and Lucy B. D. Wynne, is the widow of William Dean Wynne, a deceased brother of Mary.

The amended bill of complaint alleges, among other things, that at the time of Mary W. Wynne's death a large sum of money was on deposit in The Attleborough Savings Bank situated in the commonwealth of Massachusetts, in an account which then stood in the names of Mary W. Wynne or Lucy D. Wynne, payable to either or to the survivor; that the respondent owned no interest in the account but that it belonged solely to Mary during her lifetime and at her death belonged to her estate; that the respondent, upon the death of Mary, had withdrawn all of the money remaining in said deposit and had refused to turn it over to the complainant, as administrator of Mary's estate.

The respondent's answer admitted some and denied others of the material allegations of the bill and further asserted that "the complainant's intestate did, on the 13th day of April, 1932 make a good, perfect and complete gift to the respondent of a joint interest in a savings bank account in said The Attleborough Savings Bank, the property of the said complainant's intestate which said account is the same referred to in Paragraph numbered 2 hereof." She also admitted that upon Mary's death she had withdrawn all of the money in said deposit but alleged that she had paid out $340 thereof on account of the funeral expenses of the complainant's intestate.

It was not disputed that for all intents and purposes Mary W. Wynne originally had made all the deposits in this account from her own money and that she was the sole owner thereof on August 12, 1914. The account designated as No. 24651 always was kept in The Attleborough Savings Bank within the commonwealth of Massachusetts.

On November 26, 1920, upon the death of a sister whose name also had been on the account since 1914, Mary caused the name of another sister Jennie S. Wynne to be added to the account. On February 17, 1925, upon Mary's order, the name of her brother Frederick L. Wynne was added in place of Jennie S. Wynne, who had deceased. On June 4, 1928, upon Mary's order, the name of Frederick L. Wynne, though he was still living, was dropped and the name of another brother, William Dean Wynne, was added. The latter was the husband of the respondent. On January 2, 1930, upon Mary's order, the name of William Dean Wynne was dropped and the name of her brother Frederick L. Wynne was again added. William was then living. He died in March 1930.

On April 13, 1932 the account still stood in the names of Mary W. Wynne and Frederick L. Wynne, payable to either or to the survivor. Frederick, with whom Mary lived in the city of Pawtucket, Rhode Island, had become ill and

was then confined to his bed. Mary was about seventy-six years of age and, because of her physical disabilities, she was unable to keep house or to get out and travel without assistance.

The respondent testified that on April 13, 1932 she accompanied Mary to the bank in Attleboro where Mary signed the order which caused respondent's name to be added to the account. This was the same kind of order as others which Mary had signed previously, when she had added different names to the account. The respondent signed the usual signature card and both order and card were witnessed by a woman teller in the bank. The respondent first testified that this teller explained the transaction as follows: "Mrs. Blackinton said to me, 'You understand that this book now belongs to you as much as to Miss Wynne; that you have the privilege of putting in and taking out of the bank.' Q. Did you make any response to her? A. I said, 'Yes, I understand.' She said the same thing to Mary. Q. What did Mary say? A. Mary said, 'I have always understood.' She had had several names before and it had been explained to her."

On cross-examination the respondent testified that she was told by this teller: "I was in partnership with her. . . . it was equally mine with Mary's. . . . That I could put in and take out, without any consent of Mary" and that Mrs. Blackinton said she was equal. The respondent, however, admitted that this was the first time she had stated to anybody that the bank teller had mentioned an equal partnership with Mary in this account. Moreover, at an earlier hearing in the probate court, she had been asked to explain what happened at the bank and why her name was put on the account and she then testified as follows: "Q. When was your name put on it? A. In the Spring of '32. Q. At the time, her brother was living? A. Yes. Q. He was well at that time? A. No. He was sick. That was why she had my name put on it. He had a shock, and it was known

he would never be any better. He lived three years on his back."

The bank teller, Mrs. Blackinton, who admittedly acted for the bank in this transaction, testified by deposition that she had a practice which she usually followed in cases where names were added to savings accounts and that she always explained, especially to old people, what such a joint account meant; and that she always "told them when they make a joint account that it belongs to either one or the other, and either one can draw at any time". She did not testify that there had been any discussion between herself and Mary, or between Mary and the respondent, to the effect that an equal partnership, or any beneficial interest in the account in favor of the respondent, was created; or that Mary had understood and acquiesced in the making of any present gift to the respondent of any beneficial interest therein.

As a result of such transaction on April 13, 1932, the account stood in the names of Mary W. Wynne or Frederick L. Wynne or Lucy D. Wynne or to the survivor in case of the death of either one. Frederick L. Wynne was then living but he was not present at the transaction and there is no evidence that he knew of or consented to the transaction. Upon Mary's order Frederick's name was dropped from the account on December 7, 1932, but the respondent was not present and knew nothing of that transaction.

The custody, control and exclusive dominion over the bankbook and money in the account was retained by Mary at all times during her life. The only time respondent had actual custody of the book was when Mary was about to go to the hospital. According to respondent's testimony Mary then entrusted the bankbook to her but gave her the following directions: "She says, 'Send the bankbook to the bank with this slip,' and she says, 'Have the money sent to you, and the bankbook, and you keep the bankbook while I am in the hospital', and I did." This withdrawal was

made solely as Mary directed to provide for her hospital expenses. All the other withdrawals before and after April 13, 1932 were made by Mary personally and were used exclusively by her for her own benefit.

All of the deposits in the account, with one possible exception, were made by Mary herself. This exception, according to respondent's testimony, was when Mary had started on one occasion to go to the bank but was unable, because of her lameness, to complete the journey. She then directed the respondent to go alone and make the deposit for her. The respondent testified that she had given to Mary, in the latter's house in Pawtucket, $20 in August 1932, $25 in December 1934, and $10 in May, 1935, which Mary deposited with her own money in this account. She admitted, however, that she had a savings account standing in her own name in the Peoples Savings Bank in Providence which was nearer to Cranston, where she lived, than was Pawtucket, and that during all these years she had never made any deposit in that account.

Mary always paid the respondent's expenses when the latter assisted her in traveling. In connection with a proposed visit to Oak Bluffs following Mary's sickness, the respondent testified that Mary said: "Lucy, you are going with me to Oak Bluffs this summer. You are going with me, you are going to stay with me, and you are coming back with me. We will have a wonderful time. We will have less money in the bank, Lucy, but it will be worth it." The respondent's niece with whom she lived also testified substantially that Mary made the above statement. But at an earlier hearing in the probate court the respondent had testified concerning this incident that "she (Mary) said, 'We're going to Oak Bluffs for three weeks.' She said 'We'll have a good time. It will cost a lot of money, but we'll have a good time.'" At that hearing respondent did not suggest that her niece was present at the time of the incident, and apparently the latter did not testify. It also appeared that the respondent assisted Mary only part of the way

toward Oak Bluffs; that she later called for Mary and accompanied her home; and that, as they were returning on the boat, Mary reimbursed the respondent for all expenses in connection with such travel and assistance.

The respondent used a diary of her own making to refresh her memory concerning the alleged transaction of April 13, 1932 and other incidents relating to this account. The diary was kept in pencil and contained admitted erasures and other questionable entries in connection with vital matters therein recorded. The respondent also admitted that she had withdrawn all of the money in this account on the first business day after the funeral of Mary W. Wynne, who died January 17, 1940, at the age of eighty-three; that she had substantially taken charge, without legal authorization, of the personal and household effects belonging to Mary and had either disposed of them or kept certain valuable items for herself, claiming the latter as gifts from Mary. She asserted that a paid-up insurance policy on the life of Mary had been given to her a year or two previously and that the money from this, together with other money of Mary's, was paid to the undertaker on account of Mary's funeral expenses.

The proceeds withdrawn from the account in question were not deposited in the account which she already had in the savings bank in Providence, but were first kept separately in an account in the Old Colony Cooperative Bank and were later turned over by her to the custody of her attorney.

The trial justice ruled that on the facts before him the substantive law of Massachusetts should be applied in determining whether or not there had been a present completed gift, as alleged by the respondent. He then discussed the evidence and, in substance and effect, made the following findings, among others, that the respondent had never given any sums of money to Mary for deposit in the account; that neither respondent nor Mary was told by the teller, or by anybody in authority at the bank, that respondent

had an equal partnership with Mary in the account; that they were told by the teller that, from the bank's standpoint, either had.an equal right to deposit or withdraw funds from the account; that Mary never actually intended by the addition of respondent's name to the account on April 13, 1932, or previously or subsequently thereto, to make a present completed gift of a joint beneficial interest in the account, or to create, by that transaction with the bank, any beneficial interest in the respondent that would entitle her to full ownership of the account upon Mary's death; that, on the contrary, Mary at all times actually intended to retain the full dominion and beneficial ownership in herself; and that she had added the respondent's name thereto solely for her own (Mary's) convenience.

The respondent contends generally that the trial justice's decision rested essentially upon his misconception of the law of Massachusetts relative to present completed gifts of an interest in a so-called joint bank account, and that such error requires a reversal of the decree. She contends, substantially, that the trial justice ruled erroneously that the law of Massachusetts, applicable to the facts in evidence, was the same in all respects as the corresponding law of Rhode Island; that the trial justice failed to apply the Massachusetts doctrine, to the effect that the transaction at the bank by itself conclusively established, in the absence of evidence to the contrary, a present completed gift of an interest in such a joint account which upon the death of the depositor would ripen into full ownership by the survivor; that there was no evidence negativing such an intention; and that the evidence relied upon by the trial justice for his findings did not warrant a decision against the creation of a present and completed gift to. the respondent.

There is serious question in our minds whether the respondent has not expanded the trial justice's comment upon certain principles of the Massachusetts and Rhode Island law respectively, beyond .what the full text of his rescript

really warrants and beyond what he intended and applied in reaching his decision. At any rate, we think it unnecessary to discuss all her contentions in that regard because the real question is not whether the law governing alleged gifts of an interest in a so-called joint bank account is in all respects the same in Massachusetts as in Rhode Island. For our purposes the controlling question is whether, in making the essential findings of fact upon which the decision was based, the trial justice actually applied appropriate principles of law as disclosed by decided cases of this kind in Massachusetts.

An examination of the rescript in that connection has satisfied us that, in making his fundamental findings of fact and in reaching his decision, the trial justice recognized and substantially applied certain pertinent rules or principles of law which are properly deducible from the decided cases in Massachusetts to which he referred: *Goldston* v. *Randolph*, 293 Mass. 253; *Sullivan* v. *Hudgins*, 303 Mass. 442; *Castle* v. *Wightman*, 303 Mass. 74. Applying these rules and principles he found, in substance and effect, that Mary W. Wynne never actually intended, by the transaction at the bank on April 13, 1932, to make a present completed gift of a joint beneficial interest in the account as claimed, or to create, by a completed contract with the bank, any present beneficial interest which would ripen into full ownership by the respondent upon Mary's death. Since the trial justice applied appropriate principles of Massachusetts law, as found in the above-cited cases, in determining the controlling issue of fact in the case, namely, that Mary did not have the requisite intent on April 13, 1932 to make such a present completed gift or contract, we cannot agree with the respondent's contention that the trial justice's decision rested essentially upon a misconception of the law of Massachusetts.

The respondent next contends that under the law of Massachusetts the mere fact that the depositor had such a transaction with the bank conclusively established, in the ab-

sence of evidence to the contrary, the respondent's claim of a present completed gift of a beneficial interest in the account that on Mary's death ripened into full ownership by respondent. We do not find that the trial justice ruled otherwise as a matter of law; but we do find that he did not agree with the respondent's contention that there was no competent evidence to the contrary.

The trial justice took the view that, as between these parties, the mere form of the deposit was not conclusive but that it was still open to be explained to the contrary; and that he was entitled to consider all the attendant facts and circumstances which threw light upon the depositor's actual intention not to make any present completed gift or contract with the bank such as claimed by respondent. In our opinion he was justified, by certain express rulings in the above-mentioned Massachusetts cases, in considering such facts and circumstances as being competent evidence upon that basic issue. In this connection it should be noted also that this respondent was not entitled to any presumption of gift, as generally prevails where a relationship of husband and wife exists. See *Berry* v. *Kyes,* 304 Mass. 56; *Perry* v. *Leveroni,* 252 Mass. 390.

The respondent further contends that the decision as made was not warranted by any competent evidence in the case. To some extent this is bound up with the previous contention. We have examined the transcript and exhibits, together with the rescript of the trial justice, and we are unable to agree that there is no competent evidence in the case which would warrant the decision as made, especially if certain material parts of respondent's testimony are not believed.

In his rescript the trial justice stated expressly that he was unable to give full credence to all the evidence of the respondent and he specifically referred to certain material portions thereof which did not carry conviction. He pointed out from the evidence the reasons for concluding that such portions of evidence were "colored" and also the irregulari-

ties and inherent weaknesses of respondent's self-supporting diary. He also discussed reasonable inferences to be drawn from all of the facts and circumstances which threw light on the depositor's actual intention when she added respondent's name to the account. Included in these facts was the reason which respondent herself first gave in her testimony in the probate court and which was believed by the trial justice to indicate the true reason for Mary's action at the bank, namely, her own convenience.

No one instance by itself was relied upon by him for his decision. The combination of all the competent facts and circumstances, together with reasonable inferences therefrom, disclosed to him a consistent course of conduct by Mary before, at and after the transaction at the bank and led him to make certain specific findings of fact. These findings are not inconsistent with each other or with his ultimate conclusion. Under all the circumstances we cannot say that the trial justice's decision was clearly wrong and that it must be reversed as a matter of law.

In this connection the respondent contends that the trial justice erroneously placed upon her the burden of establishing the gift as claimed, thereby misconceiving the law of Massachusetts in that regard. Assuming, without deciding, that the law of Massachusetts rather than the law of the forum would govern as to the burden of proof in a case of this kind, and assuming also that the law of Massachusetts is different from the law of Rhode Island in that regard, we find that the trial justice, in reaching his decision, actually gave the respondent the benefit of the rule for which she contends. In his rescript he found not only that respondent had failed to convince him by her evidence that a present completed gift was intended by Mary but he expressly stated: "I find that the intent of Mary W. Wynne was at all times to retain the full beneficial interest in such account to herself, the said Mary W. Wynne. I find that the complainant has proved by a fair preponderance of the testimony the allegations of the bill of complaint and is entitled

to a decree in his favor as prayed." The bill had alleged that respondent's name was added for Mary's convenience and that the respondent owned no interest in the account during Mary's life or upon her death.

The respondent lastly contends that she is entitled at least to a credit of $340 which she claims to have paid on account of Mary's funeral expenses. It appeared in evidence that the respondent filed a claim for this amount against Mary's estate; that the complainant as administrator disallowed that claim; and that no action thereon was commenced by respondent within the statutory period. Such a claim, in the absence of fraud, misrepresentation, or accident and mistake, has been held to be extinguished and barred. *Gray* v. *Ahern,* 63 R. I. 363. Therefore, if Mary's funeral expenses were paid from money actually belonging to the respondent, thus forming a basis for her claim against Mary's estate, she may not now revive in equity the same claim that she had voluntarily abandoned and that had been extinguished at law. On the other hand, if such expenses were paid from money actually withdrawn from this account by respondent after Mary's death, it might be argued that in equity the complainant should not receive the full balance that was in the account at Mary's death and the additional benefit of the paid funeral bill, which he ordinarily would have to pay. The answer to this is that the respondent's evidence makes it appear that most, if not all, of such expenses were paid *not* from moneys withdrawn from this account after Mary's death but rather from other moneys not expressly referred to in this decree. If, however, any of such moneys were used to pay a part of the funeral expenses, that fact and the amount thereof are not so clear from the respondent's evidence as to require us to hold that the decree in that respect was wrong.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

*Henry E. Crowe, Thomas Hetherington,* for complainant.
*Matthew W. Goring,* for respondent.