243 P.2d 777

PETERS v. MACCHIAROLI et al.

No. 5410.

Supreme Court of Arizona.

April 28, 1952.

A. L. Maltby, of Phoenix, for appellant.

Stahl, Murphy & Bishop, of Phoenix, for appellees.

UDALL, Chief Justice.

This is an appeal by H. C. Peters, defendant-appellant, from a judgment rendered against him in a suit brought by plaintiffs James and Mike Macchiaroli, d. b. a. James Macchiaroli Fruit Company (appellees herein), and from the order denying his motion for a new trial. The case was tried to a jury and its findings formed the basis for the money judgment that was entered. The parties will hereafter be referred to as plaintiff and defendant.

The defendant was the owner of an 80-acre citrus grove and on November 16, 1948, he entered into a written agreement with the plaintiffs—who were growers and shippers of citrus fruit—for the sale of his entire crop of grapefruit, navel, sweet, and valencia oranges at specified prices for each class on a "packed out box" basis. Obviously the poorly drawn contract was the work of laymen—the evidence shows that each party took a hand in its draftmanship—but considered in the light of the evidence adduced and the well-established practices and usages governing such sales it is not difficult to interpret.

According to recitations in the contract the plaintiffs gave the defendant a deposit of $2,000 "to be applied to the purchase of the citrus fruit on above property" and it was further agreed that "If fruit taken by Buyer * * * does not equal deposit * * * difference in amount shall be refunded to Buyer by Seller, H. C. Peters." This latter clause forms the basis for the instant suit as the plaintiffs alleged and proved to the satisfaction of both the court and jury that prior to a killing frost they had only been able to pick some 2306 "field boxes" of merchantable fruit, which netted 1536 "packed out boxes". Judgment was entered for $1317.54 which was the difference between the sum owed for the fruit picked and the amount advanced to defendant.

The defendant, in addition to his answer denying that he was indebted to the plaintiffs in any sum whatsoever, filed a counter-claim seeking damages in the sum of $4807.46 for the claimed breach of the contract in which it was alleged that plaintiffs had failed to pick and pack the entire citrus crop. However there being no evidence to support the counter-claim the court instructed a verdict for the plaintiffs.

■ The defendant has attempted to set forth six assignments of error but only the first and last are deserving of consideration. From time immemorial this court has held that assignments such as these which appear in the opening brief, e. g. "The court erred in refusing appellant's requested instruction #1" are so patently defective as to not require treatment. Our latest expression on the subject—wherein the previous cases are collected—is Meloy v. Saint Paul Mercury Indemnity Co., 72 Ariz. 406, 236 P.2d 732, 733, from which we quote:

"After the repeated and pointed reminders we have given to the bar in this matter, it would seem that by now it should be known by all its members that a compliance with the rules is mandatory."

The defendant's main theory of the case is that the title to the entire crop of citrus fruit passed to the plaintiffs on the date of signing the contract, and therefore the loss occasioned by the killing frost of January 3, and 4, 1949 fell upon the plaintiffs. On the other hand plaintiffs contend that this was an executory contract of sale as distinguished from an executed contract and therefore title did not pass until the goods were in a deliverable condition.

■ The cardinal rule is that title to specific goods passes when the parties to the contract intend it to be transferred. Section 52–517, A.C.A. 1939; Vol. 2, Williston on Sales, Revised Edition, section 259. The intent is to be gathered from the terms of the contract, the conduct of the parties, usages of the trade, and the circumstances of the case. Section 52–517, supra; Vol. 2 Williston on Sales, supra; Wanee v. Thomas, 75 Cal.App. 231, 242 P. 509. In the instant case there is nothing

specific in the contract which indicates the intent of the parties.

■ The Uniform Sales Act, section 52–501 et seq., A.C.A. 1939, lays down the rules for ascertaining the intention of the parties where a contrary intention does not appear. The material part of section 52–518, A.C.A. 1939 is as follows:

"2. Where there is a contract to sell specific goods and the seller is bound to do something to the goods, for the purpose of putting them into a deliverable state, the property does not pass until such thing be done;" * *.

It will be noted from the above section that title does not pass to the buyer until the goods are in a deliverable state. The rule based upon this section of the Uniform Sales Act is stated in 46 Am.Jur., Sales, § 420:

"A contract of sale is said to be executory when there remains something to be done the performance of which is a condition precedent to the transfer of the property. Accordingly, the principle is often stated that if anything remains to be done by either party to the transaction before delivery—as, for example, something remaining to be done to determine the price, quantity, quality, or identity of the thing sold, or *something remaining to be done to make it deliverable* — the contract is merely executory, and title does not vest in the buyer until

such acts have been performed." (Emphasis supplied)

See also Walti v. Gaba, 160 Cal. 324, 116 P. 963; MacRae v. Heath, 60 Cal.App. 64, 212 P. 228; Wanee v. Thomas, supra; Breden v. Johnson, 56 N.D. 921, 219 N.W. 946.

■ In the case at bar the record shows that the citrus fruit was immature on the date of signing of the contract and the plaintiffs could not have been forced at that time to accept it in that condition. The jury found that on the date the frost occurred that plaintiffs had picked all the merchantable and mature fruit in the grove. Therefore the defendant as seller still had to do something to this fruit to put it in a deliverable state, namely, to irrigate the grove and tend it until it was mature and ready for picking. We hold that this was an executory contract to sell and title to the immature fruit on the trees at the time of the frost had not passed to the plaintiffs.

Defendant cites and relies upon Breitengross v. Theodore Krumm, Inc., 35 Cal. App.2d 639, 96 P.2d 370, to support his theory that the title to all the fruit had passed to the plaintiffs. In the Breitengross case there were two different material facts present which do not exist here. The contract provided that the "Seller has sold and the Buyer has bought * * *" but more important the citrus fruit was mature and ready to harvest on the date the contract was signed. The

court held that under the well-known rule title passed as there was nothing to be done to the fruit to put it in a deliverable state. That case is not in point because of the different conditions that existed and the indication of intent shown in the contract.

The court submitted this interrogatory: "Did the plaintiff pick all of the merchantable fruit off the entire acreage before the expiration date of the agreement which is July 15, 1949?", and when the jury asked for further instructions he properly defined the word "merchantable" as meaning "salable; fit for the market; sound and undamaged; such as is generally sold in the market; vendable in the market". The answer given by the jury to the interrogatory was in the affirmative.

The defendant maintains that the court erred in injecting the merchantable angle into the case for the reason that the contract did. not so specify. In other words, if we accept the defendant's version, the buyer was obligated to pick everything in the grove before the frost occurred irrespective of whether it was mature and ready for the market, and that having failed to do so they must stand the loss. This contention might be true late in the growing season when leaving the fruit on the trees would not develop it further, but at this early part of the season we think the trial court's construction was a reasonable interpretation of the contract to hold that the buyer was only obligated to take the fruit that was marketable. Any other construction would result in the buyer picking small and immature fruit which would never have a chance of becoming merchantable and would be a total loss to both of them.

Furthermore the contract provides: "In the event of frost, wind or any other damage caused by act of God, this agreement will be null and void." The record is replete with evidence to the effect that this particular ranch was in a section known to the industry as a "late area" and that the fruit ordinarily was not ripe until March and April or. later. It is common knowledge, of which we may take judicial notice, that the bulk of citrus crops in the Salt River Valley become fully grown and merchantable in the calendar year following the crop bloom. Two of the defense witnesses affirmed these facts and the caretaker of the grove, Mr. Reedy, testified that the plaintiffs should only be required or expected to pick fruit that was marketable. The plaintiffs' evidence was to the effect that during the first days of December they had picked all of the mature fruit from the grove and that the rest was not ready to pick before the crop was totally destroyed by frost. The defendant offered no testimony to the contrary but even if he had we do not weigh the evidence to determine its preponderance but are only concerned with whether facts exist which might reasonably support the judgment and if they do, it is our duty to sus-

tain the judgment. Hillman v. Busselle, 66 Ariz. 139, 185 P.2d 311.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.