382 P.2d 226

**Lloyd G. HOLLIS, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, and Merritt-Chapman & Scott Corporation, Respondents.**

**No. 7578.**

Supreme Court of Arizona.

In Division.

May 29, 1963.

Douglas O. Peterson, Phoenix, for petitioner.

Lorin G. Shelley, Phoenix, for Industrial Commission of Ariz.

Shimmel, Hill, Kleindienst & Bishop, Phoenix, for Merritt-Chapman & Scott Corp.

BERNSTEIN, Chief Justice.

This is a certiorari proceeding to review an award of the Industrial Commission denying compensation for permanent disability. Petitioner was a heavy duty mechanic working at the Glen Canyon Dam. Petitioner at times would have to service tractors and other heavy equipment at the bottom of holes mined as part of the project. He would be lowered part way in a basket and then would descend the last 25 to 30 feet hand over hand down hand lines. On the day of the accident petitioner was climbing out of a hole by use of a rope. The rope slipped, petitioner lost his balance and fell. His left arm was caught and was pulled out of its socket. Petitioner was awarded accident benefits but was denied benefits for permanent disability. On rehearing the commission affirmed its award.

Petitioner was 47 years old. He had been a wrestler and had dislocated the same shoulder twice before while wrestling. At the time of the hearing he was wearing a brace which he had not worn before the accident. The purpose of the brace was to keep the arm from getting into a position which would cause the shoulder to go out of its socket.

Petitioner testified that his shoulder had not been out of its socket since his wrestling

days and that he had continued to wrestle after the second dislocation. He also testified that since the injury his arm had come out of its socket a number of times. His wife testified that his physical condition was perfect before the accident but that she had seen the arm come out of its socket on numerous occasions since the accident.

One of petitioner's working associates who was also the business agent of the union local said he had seen the petitioner turn handsprings prior to the injury. The same associate said he had never seen the arm come out of its socket prior to the injury even when petitioner was working with heavy loads with his arms over his head. This associate testified that as the business representative of the union he could not recommend petitioner for the same kind of work he had done before because of the tendency of the arm to come out of its socket.

"Q. Could you recommend Mr. Hollis to assume the same job he had before?

"A. No, sir.

"Q. Why not, sir?

"A. Because, No. 1, the contractor I believe would say—well, I don't know just exactly how to put this.

"Q. Just say it as best you can, sir.

"A. The contractor would rebel on it and he would not accept the man if the man came out there because he would

not be physically able to do the work, and that would be likely to cost me my job, *I would lose my job over it if I referred a man to a job in his condition.*

"Q. *Present condition?*

"A. *In his present condition now, I could lose my job over such as that, and I would be doing false work according to our organization.*

"Q. It is your opinion, as I understand it from your testimony, that his present physical condition does not qualify him to do the same job that he did before the injury?

"A. Absolutely does not.

"Q. In his present condition from your own observation could he help you lift up an engine hood weighing three or four hundred pounds?

"A. No." (Emphasis added)

Petitioner's present employer testified the petitioner was not able to do the work of a heavy mechanic since the accident because of his physical condition. He further testified that he had seen petitioner's arm come out of its socket since the injury.

One of the doctors testified as follows:

"It is also the general consensus of the medical profession that a subsequent dislocation after a number of dislocations have occurred does not produce other than a temporary aggravation of **this condition** and for the reasons that

I have just enumerated, that the damage which permitted the recurrences to occur is already there and that no tearing of the tissues or variations from the normal from an anatomical or physical standpoint occur as quickly as the shoulder has been reduced."

\* \* \* \* \* \*

"Q. Did you see him the week before the injury of 1960?

"A. No, sir, but I know what happened to his shoulder from the history, and nothing happened by this accident that I was able to find by examination or X-ray to render his condition any different from any other recurrent dislocation of the shoulder that I have ever seen.

"Q. In other words, your testimony is that from your examination, in his present condition, that that existed before the accident, is that correct?

"A. It is my opinion that the condition of this shoulder is no different now than it was prior to the accident as described as having occurred."

\* \* \* \* \* \*

"Q. Do you feel he could lift 200 pounds with his left hand?

"A. There is nothing happened to his shoulder preventing him from lifting; the only problem with a recurrent dislocation of the shoulder, the danger is dislocating itself.

"Q. You admit if he raises his hand over his shoulder there is a good possibility that his shoulder would become dislocated?

"A. I am sure there is a certain position, and he knows what position that is, but also it will have to be in that position before it will come out."

 We recognize that it is not for us to weigh conflicting evidence, Schulze v. Industrial Commission, 93 Ariz. ——, 381 P. 2d 577. However, where the uncontradicted facts are controverted only by medical opinion that those facts did not exist such medical opinion is not sufficient to create conflicting evidence. Hemphill v. Industrial Commission, 91 ·Ariz. 322, 372 P.2d 327. Here the uncontradicted testimony is that petitioner's arm did not go out of its socket during the time he was employed as a heavy mechanic and that it did so frequently after the injury. The doctor's

" \* \* \* negative conclusions are not predicated upon medical. findings or facts, and constitute merely an opinion that he could not relate petitioner's present condition entirely to the injury." Hemphill v. Industrial Comm., supra, 91 Ariz. at 325, 372 P.2d at 329.

The award is set aside.

STRUCKMEYER and LOCKWOOD, JJ., concur.