508 P.2d 66

Martha Kathryn Hazlett O'HAIR,
Appellant,

v.

Huston Harding O'HAIR, Appellee.

Huston Harding O'HAIR, Appellant,

v.

Martha Kathryn Hazlett O'HAIR, Appellee.

No. 10907–PR.

Supreme Court of Arizona,
In Banc.

March 22, 1973.

Rehearing Denied April 17, 1973.

Page number 237.

Rawlins, Ellis, Burrus & Kiewit, by Norman D. Hall, Jr., Phoenix, for appellant-appellee.

Cavness, DeRose, Senner & Rood, by John W. Rood, Phoenix, for appellee-appellant.

STRUCKMEYER, Justice.

This action for divorce was brought by Martha Kathryn O'Hair, plaintiff in the lower court, against her husband, Huston Harding O'Hair. Judgment was entered in the Superior Court granting to plaintiff a divorce, but denying an award for alimony. The Judgment also disposed of certain property asserted to be the separate property of the husband, granted support for the two minor children of $100.00 a month each, and denied any support for an adult handicapped daughter. The Court of Appeals reversed, 16 Ariz.App. 565, 494 P.2d 765 (1972). Opinion of the Court of Appeals vacated. Judgment of the Superior Court affirmed.

The parties to this divorce action were married in 1947 in Phoenix, Arizona, and

have been, until the filing of the decree of divorce on December 11, 1970, husband and wife. In 1965, defendant suffered a cerebral accident and has not been gainfully employed since, except insofar as he managed his business investments. In September of 1968, defendant had distributed to him, from the sale of the estate of his mother in Illinois, $203,715.11, of which he placed $150,000.00 in a savings account with the Western Savings and Loan Association in joint tenancy with right of survivorship. A signature card was executed so stating. Forty thousand dollars was placed in a certificate of time deposit with right of survivorship in the names of himself and plaintiff. Thereafter, both parties drew from the savings account, the plaintiff keeping possession of the passbook. Prior to the commencement of the divorce, the plaintiff wife made a withdrawal of $75,000.00 from the savings account and $25,000.00 held in their joint names under certificate of deposit. With these, on October 4, 1969, she established in the United Bank in Phoenix a revocable trust with herself as beneficiary.

The trial court found that the $100,000.-00 was the separate property of the defendant and entered a judgment favorable to him, pursuant to the authority of A.R.S. § 25–318, providing that neither party shall be divested of his separate property in a divorce action.

■ It is settled in Arizona that where a person deposits money in a bank to the credit of himself and another, payable to the order of either, or the survivor of them, such deposit vests in the other a joint interest with the depositor in the fund. Any question as to the extent of the other's interest is determined from the intention of the depositor—whether a gift was intended or whether the joint tenancy transaction was entered into for other purposes. Saylor v. Southern Arizona Bank and Trust Company, 8 Ariz.App. 368, 446 P.2d 474 (1968); Phoenix Title & Trust v. King, 58 Ariz. 477, 121 P.2d 429 (1942);

McNabb v. Fisher, 38 Ariz. 288, 299 P. 679 (1931). In this, Arizona follows the general rule in the United States where not otherwise changed by statute. *See, e. g.,* Harrington v. Emmerman, 88 U.S.App D. C. 23, 186 F.2d 757 (1950); Juraitis v. Andriulis, 318 Mass. 782, 64 N.E.2d 701 (1945); Erickson v. Kalman, 291 Minn. 41, 189 N.W.2d 381 (1971); Tucker v. Tucker, 252 Miss. 344, 173 So.2d 405 (1965); Clabbey v. First National Bank, 320 S.W.2d 738 (Mo.App.1959); Esposito v. Palovick, 29 N.J.Super. 3, 101 A.2d 568 (1953); Laurent v. Williamsburgh Savings Bank, 28 Misc.2d 140, 137 N.Y.S.2d 750 (1954); In re Berzel's Estate, 101 N.W.2d 557 (N. D.1960); Wynne v. Wynne, 69 R.I. 229, 33 A.2d 173 (1943); Quesenberry v. Funk, 203 Va. 619, 125 S.E.2d 869 (1962).

■ While as between the bank and the depositor the contract of deposit is conclusive, the mere form of the bank account is not regarded as sufficient to establish the intent of the depositor to give another a joint interest in or ownership of the deposit. Bolton v. Bolton, 306 Ill. 473, 138 N.E. 158 (1923); Ball v. Forbes, 314 Mass. 200, 49 N.E.2d 898 (1943); Hodgins v. Zabel, 7 Misc.2d 484, 166 N.Y.S.2d 135 (Sup.Ct. 1957); Industrial Trust Co. v. Taylor, 69 R.I. 62, 30 A.2d 853 (1943). As the court said in Cashman v. Mason, 72 F.Supp. 487, 492 (D.Minn.1947):

> "Joint accounts are a common method of handling funds in a bank as between husband and wife and others for mutual convenience and economy, but without necessarily intending to bestow any present interest in the fund on the one who is joined for the convenience of the owner of the moneys deposited."

"[T]he intention of the depositor is controlling." McNabb v. Fisher, supra, 38 Ariz. at 295, 299 P. at 681.

The trial court found that appellee "did not intend at any time to change the character as sole and separate property of the funds which were deposited by him at Western Savings and Loan Association." This

finding is predicated at least in part on the testimony of the defendant:

On direct examination:

"Q Mr. O'Hair, when you established this account at Western Savings, for example, you put it in your joint names, is that correct?

A That is right.

Q Did you intend to give that money to your wife?

A No, I did not, sir.

Q What was your intention, why did you put both names, then, Mr. O'Hair?

A In the event something happened to me, * * * it would be easier for her to go up and draw some out to live on. Now, I am talking about in the event of my death."

On cross examination:

"Q Well, you did ask her, though, Mr. O'Hair, to withdraw sums of money and put them in the Valley Bank checking account, didn't you?

A I said whatever was necessary for living expenses, and also—

* * * * * *

Q Mr. O'Hair, looking at those records, isn't it true you didn't tell your wife she could not make withdrawals from that account? She could make withdrawals from that account at Western Savings whenever she wanted to, couldn't she?

A She could make withdrawals for household expenses."

Defendant's testimony tends to suggest that this was their understanding. She was asked this question:

"Q * * * what I am asking you is what were the checks drawn on this particular account used for, for the most part?

A Living expenses."

Both plaintiff and defendant made withdrawals from the account. Her withdrawals were usually deposited to the parties' joint checking account from which household and living expenses were paid. However, in September, 1969, a year after opening the account, Mrs. O'Hair withdrew the $75,000.00.

█ A bank account opened or carried in the name of two or more persons is in their joint custody. Joint custody of an account is a fact which, in itself, negatives any idea of a gift, In re Betts' Estate, 122 N.Y.S.2d 234, 235–236 (Sur.1953), since the essential element of a gift of personal property requires an intent on the part of the donor to divest himself of all dominion and control. In Rasmussen v. Oshkosh Savings & Loan Ass'n, 35 Wis.2d 605, 608, 151 N.W.2d 730, 732 (1967), the court, when speaking of a savings account placed in a wife's name, said:

"Gifts from a husband to his wife are not presumed from the marital relationship but are governed by the same rules as gifts between strangers, namely, there must be an intention to part with the interest in and dominion over the property and there must be delivery of the property."

█ The essential elements of a gift inter vivos are that the donor manifest a clear intent to give to the party claiming as donee, and give to the latter before death, full possession and control of the property. Goff v. Guyton, 86 Ariz. 349, 346 P.2d 286 (1959). There must be a donative intent, delivery, and a vesting of irrevocable title upon such delivery. Armer v. Armer, 105 Ariz. 284, 463 P.2d 818 (1970).

We approve of the holding in In re Estate of Schneider, 6 Ill.2d 180, 127 N.E.2d 445 (1955), where the court first said:

"The familiar joint bank account has had an uneasy career in the courts because the relationships which it contemplates do not fit readily into common-law categories." 6 Ill.2d at 183, 127 N.E.2d at 447.

Thereafter, the Illinois court examined many of the decisions in the State of Illi-

nois, and concluded concerning joint accounts as follows:

> "To establish a gift, the proof must be clear and convincing, People v. Polhemus, 367 Ill. 185, 10 N.E.2d 966; Rothwell v. Taylor, 303 Ill. 226, 135 N.E. 419, and the burden is upon the alleged donee to establish the existence of a donative intent. Bolton v. Bolton, 306 Ill. 473, 138 N.E. 158. The decisions of this court relied on by appellant go no further than to indicate that the deposit agreement tends to show a donative intent on the part of the original owner of the funds, and that the intention so manifested, in the absence of contrary evidence, is sufficient to establish ownership in the survivor by virtue of the contract upon the death of the original owner. *The form of the agreement, however, is not conclusive as to the intention of the depositors between themselves.*" 6 Ill.2d at 187, 127 N.E.2d at 449. (Emphasis supplied.)

■ The testimony in this case is sufficient to support the trial court's finding that defendant did not intend to change the character of his funds which were deposited by him in the Western Savings and Loan as his sole and separate property.

No principles are better settled in Arizona than, first, that the duty of a reviewing court begins and ends with the inquiry whether the trial court had before it evidence which might reasonably support its action viewed in the light most favorable to sustaining the findings, and, second, that the reviewing court will not weigh conflicting evidence on appeal. Hollis v. Industrial Commission, 94 Ariz. 113, 382 P.2d 226 (1963); Nash v. Goor, 94 Ariz. 316, 383 P.2d 871 (1963); Jackson v. Clintsman, 91 Ariz. 314, 372 P.2d 204 (1962); Fernandez v. Garza, 88 Ariz. 214, 354 P.2d 260 (1960); Hurst v. Hurst, 86 Ariz. 242, 344 P.2d 1001 (1959); Odom v. First National Bank of Arizona, 85 Ariz. 238, 336 P.2d 141 (1959); Smith v. Connor, 87 Ariz. 6, 347 P.2d 568 (1959); Rightmire v. Sweat, 83 Ariz. 2, 315 P.2d 659 (1957);

Gilliland v. Rodriquez, 77 Ariz. 163, 268 P.2d 334 (1954); Bank of Arizona v. Harrington, 74 Ariz. 297, 248 P.2d 859 (1952); Peters v. Macchiaroli, 74 Ariz. 62, 243 P.2d 777 (1952); Hamilton v. McDaniel, 71 Ariz. 371, 227 P.2d 755 (1951); Donahue v. Babbitt, 26 Ariz. 542, 227 P. 995 (1924); Stuart v. Norviel, 26 Ariz. 493, 226 P. 908 (1924); Grant Bros. Const. Co. v. United States, 13 Ariz. 388, 114 P. 955 (1911), aff'd, 232 U.S. 647, 34 S.Ct. 452, 58 L.Ed. 776 (1914).

■ The plaintiff is not in substantial disagreement with the principles announced to this point in the decision. The conclusion is therefore compelled that if the defendant did not intend to transfer a joint tenancy interest, with all of its legal implications, in the savings deposit and time deposit in Western Savings and Loan Association, the plaintiff did not acquire by gift in praesenti a one-half interest in the corpus of the deposit.

Plaintiff acknowledges this, for her ultimate position is that "what she actually received from defendant was not a sum of money or the gift of an undivided one-half interest in a sum of money, but the gift of right of control over the bank account." She quotes from and relies on the Montana case of State Board of Equalization v. Cole, 122 Mont. 9, 195 P.2d 989 (1948). Therein, the court said:

> "The actual gift made is not the money in the bank but the gift of a co-equal right with the donor to exercise control over the deposit." 122 Mont. at 16, 195 P.2d at 993.

■ However, it is clear that as between the parties the right to exercise control over the deposit was not an unfettered and unrestricted right. The right of withdrawal by plaintiff was for the limited purposes of household or necessary living expenses and a withdrawal for any other purpose without the specific consent of the defendant is a wrongful appropriation of the defendant's separate property, which the court had the power in complete dispo-

sition of the parties' properties to order restitution.

The plaintiff also complains of the failure of the court to award her alimony. She points out that she was 49 years of age and that she had been supported by the defendant all during her marriage, and that she had no formal training or education.

The defendant, on the other hand, argues that the court found the plaintiff to be able-bodied and in good health; that he is unable to support either himself or others, but that the court did provide support for the minor children of the parties; that that the court awarded the family residence to the plaintiff, which had an equity value of $30,000.00, the household furnishings and furniture of the value of $5,000.-00, the sums then on deposit at the Valley National Bank and the United Bank of Arizona, together with a 1968 Buick automobile and a 1967 Triumph automobile. In addition, the decree gave to the plaintiff $7,893.86, of which $3,893.86 was for various sums owed by plaintiff for bills, etc.

█ Aside from his separate property, the defendant only received from the community estate certain tools and equipment from his home workshop of a value of $1,000.00 and a 1966 Buick automobile then in his possession. It is apparent there is a vast disparity between the value of the community property awarded to the plaintiff as against the value of the property awarded to defendant. In Cummings v. Lockwood, 84 Ariz. 335, 337, 327 P.2d 1012, 1014 (1958), we laid down the test that the awarding of support and maintenance for the wife is addressed to the sound discretion of the trial court and this Court will not interfere with such discretion unless it is clear that some injustice has been done. Finding no abuse of discretion, the award of the Superior Court in this respect is affirmed.

Finally, the plaintiff complains of the failure of the trial court to provide support for the parties' blind and mentally defective daughter after her twenty-first birth-day. As to this, we noted in Genda v. Superior Court, 103 Ariz. 240, 243, 439 P.2d 811, 814 (1968), the general rule that a court in a divorce suit is without power to provide for the support of an adult child of the parties. We also said that where the adult child is physically and mentally incapacitated to provide for his own maintenance, the authorities consistently hold that in a divorce action there is no authority to provide for such adult child's support in the absence of contract or statutory authority. In Arizona, the statute conferring jurisdiction to order support, A.R.S. § 25-319, subsec. A, provides that in a final judgment of divorce a husband may be directed to pay such amounts as are necessary for the support and maintenance of his minor children only.

█ We therefore hold that the Superior Court was without jurisdiction to provide for the support and maintenance of the adult child.

Pending the appeal by Martha Kathryn O'Hair, the defendant petitioned the Superior Court to modify the child support provisions of the divorce decree on the grounds that the children's circumstances had changed since the entry of judgment. The Superior Court declined to consider in part defendant's petition. Defendant urges in this Court that the Superior Court did not lose jurisdiction to modify those portions of the decree which were not appealed by Martha Kathryn O'Hair.

█ Ordinarily, an inferior tribunal loses all jurisdiction in each and every matter connected with a case after an appeal has been perfected, except those matters in furtherance of the appeal. *See, e. g.,* Whitfield Transportation, Inc. v. Brooks, 81 Ariz. 136, 141, 302 P.2d 526, 529 (1956). However, because the Legislature has provided, by A.R.S. § 25-321, that the Superior Court may from time to time after final judgment amend, change or alter any of the provisions respecting the care, custody or maintenance of children, we think it retains jurisdiction pending appeals in such matters, at least where

the provisions for the care, custody and maintenance of the children are not the subject matter of the appeal. Goetz v. Goetz, 181 Kan. 128, 134–135, 309 P.2d 655, 660–661 (1957); DeSimone v. DeSimone, 392 S.W.2d 68 (Ky.1965); Duncan v. Burnett, 292 Ky. 269, 166 S.W.2d 419 (1942).

The judgment of the Superior Court in the appeal of Martha Kathryn O'Hair is affirmed; and the Order of the Superior Court in the appeal of Huston Harding O'Hair is set aside, with directions that the Superior Court proceed to a hearing and determination of his petition.

CAMERON, V. C. J., and LOCKWOOD, J., concur.

HOLOHAN, Justice (dissenting).

The journey of joint tenancy of personal property remains an uncharted course in Arizona law. A comparison of McNabb v. Fisher, 38 Ariz. 288, 299 P. 679 (1931); Phoenix Title & Trust Co. v. King, 58 Ariz. 477, 121 P.2d 429 (1942); and Brown v. Navarre, 64 Ariz. 262, 169 P.2d 85 (1946), illustrates the problems encountered in dealing with joint tenancy, and it appears that the law is anything but "well settled" on the subject. In a helpful annotation in 43 A.L.R.3d 971, some of the various rules developed by the courts from other jurisdictions are set forth. For the cases on the contract theory see 33 A.L.R. 2d 569. Interestingly enough, the jurisdiction which the majority has seen fit to quote at length, that is, Illinois, has held that in joint tenancy bank accounts with close relatives as the joint tenants there is a presumption of gift, and the burden is upon the party questioning the gift to establish that no gift was intended by clear and convincing proof. Frey v. Wubbena, 26 Ill.2d 62, 185 N.E.2d 850 (1962); Graves v. Graves, 42 Ill.App.2d 438, 192 N.E.2d 616 (1963). This position certainly seems to make good sense and logic that at least by reason of the relationship of the parties the establishment of a joint account indicates a gift.

In my view, the above rule should also apply to husband and wife as joint tenants. The author of the opinion of the Court of Appeals in this case, after analyzing the various theories on gift and joint tenancy, stated:

"Courts have had no reluctance in holding that when a husband causes his sole and separate property to be placed in joint tenancy with his wife, that the husband is presumed to have made a gift to his wife of an undivided one-half interest in such property. Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169 (1935); Blaine v. Blaine, 63 Ariz. 100, 159 P.2d 786 (1945). Likewise, we should show no reluctance in holding that when a husband places his sole and separate funds in a joint bank account with his wife, he is presumed to have made a gift to his wife of an undivided one-half interest in such funds." O'Hair v. O'Hair, 16 Ariz.App. 565 at 570–571, 494 P.2d 765 at 770 (1972).

The foregoing position would be in harmony with our cases concerning real property and joint tenancy. The close relationship between husband and wife makes such a construction of their intentions more natural than the position by the majority which seems to treat them as strangers dealing at arm's length.

The position of the majority must be considered unsound from another and far more vital aspect. The Arizona Legislature has made special provisions for joint accounts in a savings and loan association:

"§ 6-431. Joint account; trust account

"A. If two or more persons opening or holding an account shall execute a written agreement with the association providing that the account shall be payable to any or the survivor of them, the account, and any balance thereof which exists from time to time, shall be held by them as joint owners with the right of survivorship and, unless otherwise agreed, any payment by the association to any of such persons shall be a com-

plete discharge of the association's obligation as to the amount so paid."

The facts in this case clearly show that the principal sum in dispute by the parties involves the funds placed in the Western Savings and Loan Association. The evidence shows that the application by the parties which bears both their signatures contained the following language:

> "Such account together with all deposits and accumulations therein shall be held by Association for applicants as joint tenants with right of survivorship and not as tenants in common nor community property."

The reference in the majority opinion to A.R.S. § 6–267 is misplaced since this section deals with bank deposits—not deposits in savings and loan associations. It is true that the bank deposit section is a so-called "bank protection" section, but it must be conceded that its relevance is to questions concerning deposits in a bank. The legislature in 1960 saw fit to provide a separate savings and loan code, and the sections of that code are controlling on questions involving the nature and effect of accounts in such associations.

The effect of statutes similar to A.R.S. § 6–431 has not been the subject of uniform interpretation, usually due to the fact that a number of jurisdictions have an additional statute which provides for a conclusive presumption that an account in joint ownership with right of survivorship vests title to the deposits in the survivor. See 43 A. L.R.3d 1013, § 10. In jurisdictions without a statute creating the conclusive presumption, but with a statute similar to A.R.S. § 6–431, the courts have generally held that accounts established under such a statute create a presumption of joint ownership in the named parties, but the presumption is rebuttable. Green's Estate v. Meeker, 46 Wash.2d 637, 283 P.2d 989 (1955). See also: Frey v. Wubbena, supra; Jacques v. Jacques, 352 Mich. 127, 89 N.W.2d 451 (1958).

The courts interpreting sections similar to A.R.S. § 6–431 appear to be uniform in

holding that the statute itself creates a method of holding personal property in joint tenancy, and it is not necessary that the common law elements of gift be established. The statute itself establishes a method of creating a form of ownership with right of survivorship in intangible property. It is the duty of the courts to acknowledge the statutory scheme creating such a method of holding property and give it full effect.

In the instant case legal title to the funds deposited in the Western Savings and Loan Association was vested in both husband and wife. A joint tenancy with right of survivorship was created. In order to divest the wife of her interest in such property there must be a showing of fraud, duress or mistake, or there must be established a showing that there was no intention for the beneficial interest to follow the legal title. Frey v. Wubbena, supra. The burden of establishing such a showing is upon the husband, in this case, and the showing must be made by clear and convincing evidence. In my judgment such a showing was not made in the case, and, other than the self-serving declarations of the husband, there was no evidence to support the position that he did not intend for his wife of over twenty years to have a joint interest in the savings account.

Finally the majority, without citing any Arizona authority, hold that while an appeal is pending the trial court may nevertheless hear and modify the terms of the decree.

Such a position is contrary to what at one time I thought was the settled law in Arizona. Whitfield Transportation, Inc. v. Brooks, 81 Ariz. 136, 302 P.2d 526 (1956); Ackel v. Ackel, 57 Ariz. 14, 110 P.2d 238 (1941); Allison v. Ovens, 102 Ariz. 520, 433 P.2d 968 (1967), cert. denied 390 U.S. 988, 88 S.Ct. 1184, 19 L.Ed.2d 1292 (1968).

The majority feel that A.R.S. § 25–321 which gives the superior court authority to change or alter the final judgment, is also authority for the trial court to act even while the matter is on appeal. No Arizona

authority is cited for this position, and this Court's holding in Allison v. Ovens, supra, is contrary to such position.

The provisions of A.R.S. § 25–321 are not in conflict with our previous holdings, and especially in this case where there is no final judgment since the matter has not been resolved on appeal. Secondly an appeal, according to our previous holdings, removes the entire case from the superior court and there is nothing pending in that court upon which it can act.

The experience over the years has made it abundantly clear that the holding in Allison v. Ovens, supra, and prior cases is not only good law but good sense. While a matter is on appeal, particularly in a divorce action, the battles, disputes and bitterness can continue unended in the trial court during the pendency of the appeal. Errors of law made by the trial court can be compounded. Until the appeal is resolved the parties remain undecided in their rights. Decisions by the appellate court may so affect the case that so-called modifications during the course of the appeal may be made nullities.

Ample protection is afforded the parties by permitting application to the appellate court for a limited return of jurisdiction to the trial court. The appellate court can provide adequate protection to the needs of the parties as they occur, and upon a proper showing can permit the trial court to hear applications for modifications of such matters as custody, child support or alimony.

In this case the ultimate disposition of a large sum of money is the principal issue. A modification of support payments by the husband would certainly have to be changed if the sum is awarded solely to him. From a policy standpoint it makes little sense to allow the trial court to be occupying itself with such matters only to have the very basis of the decision subsequently made a nullity after ruling by the appellate court. In other words if the trial court finds the husband in reduced circumstances, reduces the child support payments and shortly thereafter the appellate court awards substantially all the assets to the husband the so-called need or reduced circumstances is no longer the fact. Of course it can be urged that another petition for modification can be filed by the wife to secure an increase in the child support payments which of course increases the expense and time of the litigation.

The abandonment of our previous rule will only lead to extended litigation in the superior court on those divorce cases which are appealed. The results of such a rule can be of no aid to the parties, to the trial court nor to the cause of justice.

HAYS, C. J., concurs.